**Beverly RICHARDSON, Sandra Workman, and Yvonne Mannor, Plaintiffs,**

v.

**GENESEE COUNTY COMMUNITY MENTAL HEALTH SERVICES, Defendant.**

No. 98–71697.

United States District Court, E.D. Michigan, Southern Division.

March 19, 1999.

Law Office of Glen N. Lenhoff, Flint, MI by Glen N. Lenhoff, Julie A. Gafkay, for plaintiffs.

Clark Hill, P.L.C., Detroit, MI by William A. Moore, Julie A. Lawson, for defendant.

## OPINION AND ORDER

ZATKOFF, Chief Judge.

### I. INTRODUCTION

This matter is before the Court on both plaintiffs' motion for partial summary judgment and defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56(c). Each party has responded to the respective motions. The Court finds the facts and legal arguments are adequately presented in the materials before the Court, and the decisional process would not be significantly aided by oral argument. Accordingly, the motion before this Court will be disposed of upon the materials submitted. See E.D.Mich.L.R. 7.1(e)(2). For the reasons that follow, plaintiffs' motion is denied, and defendant's motion is granted.

## II. BACKGROUND

Plaintiffs have brought this action to collect overtime payments pursuant to the Fair Labor Standards Act, (hereinafter "FLSA") 29 U.S.C. § 207. The issues presented are whether plaintiffs are independent contractors or employees when they volunteer to work at defendant's Crisis Clinic, and if employees, whether plaintiffs are professionals exempt from the overtime compensation.

Beverly Richardson, Sandra Workman, and Yvonne Mannor (hereinafter "plaintiffs") are all employed by Genesee County Community Mental Health Services (hereafter "defendant") as registered nurses.[1] Plaintiffs are full time employees with defendant. Defendant is a public agency that provides mental health services at several locations.

Defendant's operate and manage a twenty-four (24) hour Crisis Clinic which provides mental health crisis intervention and referral services to the public. When an individual contacts the Crisis Clinic, a registered nurse, a psychologist, or a social worker interviews the individual to provide crisis intervention and to determine which mental health services the individual should be referred to, and then makes an appropriate referral for the individual. The Crisis Clinic is staffed 24 hours a day, all year. However, normal staffing schedules only cover regular business hours.

Thus, in order to staff the Crisis Clinic after regular business hours, during weekends, and on holidays, defendant permits its employees to voluntarily work at the Crisis Clinic after their regularly scheduled work days, and on weekends and holidays. When plaintiffs worked at defendant's Crisis Clinic, defendant's classified the hours worked as "after hours" work. Since 1987, defendant has consistently treated "after hours" work as work falling outside the employment relationship and outside the collective bargaining agreements.[2] Defendant pays its employees for "after hours" work at the contract rate of $16.38, which is less than plaintiffs regular hourly rate.

Plaintiffs are represented by labor unions.[3] The collective bargaining agreements entered into between defendant and the unions provide that "overtime and compensatory time off provisions for bargaining unit employees covered by the Fair Labor Standards Act (hereinafter 'FLSA') shall be governed by FLSA."[4] The collective bargaining agreements provide that a normal work period consists of eighty (80) hours per bi-weekly pay period. The collective bargaining agreements state the compensation in both salary and hourly amounts. Plaintiffs record the hours they actually worked on bi-weekly time sheets. The agreements also requires overtime payment for all work performed in excess of forty (40) hours per week.[5]

---

1. Plaintiff Richardson is a utilization coordinator whose job duties include going to local hospitals and looking through psychiatric records to determine if clients meet the criteria under Medicaid for inpatient psychiatric care.

   Plaintiff Workman worked in defendant's rehabilitation department and was transferred to the Crisis Clinic as a psychiatric nurse to screen clients for hospitalization and performs crisis intervention over the phone and meets with walk in clients. Plaintiff Mannor is also a psychiatric nurse employed at the Crisis Clinic.

2. Defendant also refers to after hours work at the Crisis Clinic as "moonlighting."

3. Plaintiff Richardson is represented by the Teamsters. Plaintiff Workman and Mannor

are represented by the American Federation of State, County, and Municipal Employees.

4. Plaintiffs are not contractually bound to pursue their claims under the collective bargaining agreements' grievance and arbitration procedures because FLSA rights of employees are independent of the collective bargaining process. *Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 740, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981); *Featsent v. City of Youngstown*, 70 F.3d 900, 906 (6th Cir. 1995).

5. Plaintiffs raised the issue of overtime payment for work performed at the Crisis Clinic with their unions. However, no union grievance has ever been filed about the payment or treatment of plaintiffs with respect to pay

Additionally, if mutually agreed, an employee may elect compensatory time instead of cash payment for overtime.

Plaintiffs content that their "after hours" work at the Crisis Clinic was the same type of work as the regular hourly work, they are hourly employees, and thus, they should receive overtime compensation for this work. Defendant argues that the plaintiffs who worked "after hours" at the Crisis Clinic are independent contractors, not hourly employees within the preview of FLSA.

## III. STANDARD OF REVIEW

Summary judgment is appropriate only where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue of material fact exists when there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted) In applying this standard, the Court must view all materials offered in support of a motion for summary judgment, as well as all pleadings, depositions, answers to interrogatories, and admissions properly on file in light most favorable to the non-moving party. *Id.*

A moving party who does not have the burden of proof at trial may properly support a motion for summary judgment by showing the court that there is no evidence to support the non-moving party's case. *Chelates Corp. v. Citrate*, 477 U.S. 317 (1986). If the motion is so supported, the party opposing the motion must then demonstrate with "concrete evidence" that there is a genuine issue of material for trial. *Id.; Frank v. D'Ambrosi*, 4 F.3d 1378, 1384 (6th Cir.1993). The court must draw all inferences in a light most favorable to the nonmoving party, but the court may grant summary judgment when "the

practices or amounts paid to plaintiffs. The

record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

## IV. ANALYSIS

Defendant argues that the plaintiffs who worked "after hours" at the Crisis Clinic are independent contractors, not hourly employees within the preview of FLSA. Therefore, the Court must decide whether plaintiffs are independent contractors or employees. If plaintiffs are independent contractors, then plaintiffs do not come within the coverage of the FLSA. If plaintiffs are employees, then the Court must decide whether plaintiffs are professional salaried employees or hourly employees entitled to the protections and benefits provided in the FLSA.

### A. Independent Contractor Status

The FLSA defines employment relations very broadly. First, 29 U.S.C. § 203(e)(1) defines employee as "any individual employed by an employer." Next, "employ" is defined as "to suffer or permit to work." 29 U.S.C. § 203(g). The Sixth Circuit has held that "employees are those who as a matter of economic reality are dependent upon the business to which they render service." *Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir.1984).

In *Brandel*, the Sixth Circuit adopted the "economic realities" test that included the following six factors: (1) the permanency of the relationship between the parties; (2) the degree of skill required for the rendering of the services; (3) the worker's investment in equipment or materials for the task; (4) the worker's opportunity for profit or loss, depending upon her skill; (5) the degree of the alleged employer's right to control the manner in

unions are not parties to this action.

which the work is performed; and (6) whether the service rendered is an integral part of the alleged employer's business. *Brandel,* 736 F.2d at 1117.

The "economic realities" test "looks to whether the putative employee is economically dependent upon the principal or is instead in business for himself. This test is a loose formulation, leaving the determination of employment status to case-by-case resolution based on the totality of the circumstances." *Lilley v. BTM Corp.,* 958 F.2d 746, 750 (6th Cir.1992) Nevertheless, the question of "[w]hether a particular situation is an employment relationship is a question of law." *Fegley v. Higgins,* 19 F.3d 1126, 1132 (6th Cir.1994).

### 1. Application of the Economic Realities Test

█ First, the permanency of the relationship between the parties weighs in favor of employee status. The permanency of plaintiffs' employment relationship with defendant is governed by collective bargaining agreements. These collective bargaining agreements state the terms and conditions of the employment relationship. Although plaintiffs volunteered to work "after hours" at the Crisis Clinic, plaintiffs job duties remained the same as when, they worked during "regular hours."

Second, the degree of skill required for the rendering of the services weighs in favor of employee status. Although registered nurses are skilled workers who require several years of training and are licensed by the state of Michigan, "the fact that workers are skilled is not itself indicative of independent contractor status." *Brock v. Superior Care, Inc.* 840 F.2d 1054, 1060 (2nd Cir.1988). In fact, "a variety of skilled workers who do not exercise significant initiative in locating work opportunities have been held to be employees under FLSA." *Id.* (citations omitted). In this case, plaintiffs do not exercise any initiative in locating clients. Rather, when an individual contacts the Crisis Clinic, plaintiffs interview the individual to pro-

vide crisis intervention and to make a mental health service referral. Furthermore, defendant's staff the Crisis Clinic 24 hours whether or not there is demand for mental health services.

The third and fourth factors clearly weigh in favor of employee status. Plaintiffs do not make any financial investment in the Crisis Clinic, nor do they have any opportunity for profit or loss arising from the operation of the Crisis Clinic. Furthermore, the regular contract rate paid to plaintiffs for their work is not a "profit," but rather their "earnings."

Fifth, the degree of defendant's right to control the manner in which the work is performed is also indicative of employee status. Plaintiffs must follow defendant's work rules and guidelines when working at the Crisis Clinic. Clearly, defendant exercises supervisory control when it provides its registered nurses with patient care guidelines and work rules governing employee conduct. These guidelines and work rules used during regular hours would be applicable to work during "after hours," and therefore, constitute supervisory control.

Finally, the services rendered in this case are an integral part of defendant's business. The Crisis Clinic provides mental health crisis intervention and referral services to the public. Plaintiffs are employed to perform this particular service. Thus, plaintiffs are an integral part of defendant's business. However, the Sixth Circuit has inverted this factor by asking whether the workers were economically dependent on the alleged employer. *Brandel,* 736 F.2d at 1120. As interpreted by the Sixth Circuit, plaintiffs are not economically dependent on the "after hours" work performed at the Crisis Clinic because it is in addition to their regular employment with defendant.

In sum, the totality of the circumstances reveals that as a matter of economic reality plaintiffs are employees. Defendant treats them as employees. Defendant ex-

ercises substantial control over the manner and conditions of their work. They have no opportunity for profit or loss, nor do they have any independent investment in the business. Their services are the most integral part of the Crisis Clinic's operation. Under these circumstances, it cannot be said that plaintiffs are in business for themselves. Therefore, this Court finds that plaintiffs are not independent contractors as a matter of law.

## B.  Professional Exemption

Next, this Court must determine whether plaintiffs are professional salaried employees or hourly employees entitled to the protections and benefits provided in the FLSA. The FLSA generally requires employers to pay their employees at least one and a half times their regular wage rate when the employee works in excess of 40 hours in a given work week. *See* 29 U.S.C. § 207(a)(1). The FLSA, however, exempts from this requirement "any employee employed in a bona fide executive, administrative, or professional capacity ... (as such terms are defined and delimited from time to time by regulations of the Secretary.)" *Id.* § 213(a)(1). An employee comes within the exception if they are considered a professional and paid on a salary basis. *Id.*

Defendant contends that plaintiffs are not entitled to overtime compensation under the FLSA because plaintiffs fall within the Act's exemption of professional employees. Plaintiffs argue that they do not fall within the professional employee exemption because the compensation scheme under which they are paid by defendant is not compensation on a "salary basis." Rather, plaintiffs contend that they do not fall within that exemption because their compensation scheme permits additional compensation for hours worked in excess of forty hours and permits reductions in pay for work rule violations and for failing to work eighty (80) hours in a bi-weekly pay period.

### 1.  Bona Fide Professional Capacity

The Secretary of Labor has promulgated regulations regarding an "employee employed in a bona fide professional capacity." 29 C.F.R. §§ 541.300–541.313 (1997). The regulations state that the term "professional" generally "includes those professions which have a recognized status and which are based on the acquirement of professional knowledge through prolonged study." 29 C.F.R. § 541.300 (1997). The regulations state that "[g]enerally speaking the professions which meet the requirement for a prolonged course of specialized intellectual instruction and study include ... nursing...." 29 C.F.R. § 541.301(e)(1)(1997). In this case, plaintiffs clearly come within the definition of professional status because they are licensed, registered nurses.

### 2.  Compensation Requirement

■ Next, the regulations require that "compensation on a salary or fee basis at a rate of not less than $170 per week, exclusive of board, lodging, or other facilities, is required for exemption as a 'professional employee.'" 29 C.F.R. § 541.311 (1997). Compensation on a salaried basis occurs when an employee regularly receives, each pay period, a predetermined amount, not subject to reduction because of variations in the quality or quantity of work performed. 29 C.F.R. § 541.118 (1997). Although plaintiffs' union contracts provide for compensation calculation in both hourly and salary amounts, plaintiffs generally receive each pay period a predetermined amount. *See Fazekas v. Cleveland Clinic Health Care Ventures,* Inc. No. 97 CV 1394, 1998 WL 898495 (N.D.Ohio Dec.4, 1998) (holding that home care nurses were compensated on a fee basis and within the professional exemption).

### a.  Additional Compensation

According to the Department of Labor's regulations, in certain circumstances, employers may pay exempt employees additional compensation along with a predeter-

mined amount each pay period without automatically losing the employees' salaried status. 29 C.F.R. § 541.118(b) (1997). However, some courts have stated that overtime pay is generally inconsistent with a salaried status. *Abshire v. Kern,* 908 F.2d 483, 486 (9th Cir.1990), *cert. denied,* 498 U.S. 1068, 111 S.Ct. 785, 112 L.Ed.2d 848 (1991).

The Sixth Circuit has not specifically held that overtime pay is generally inconsistent with a salaried status. However, in *Michigan Ass'n of Governmental Employees v. Michigan Dep't of Corrections,* 992 F.2d 82, 84 n. 3 (6th Cir.1993), the court of appeals noted that "[a]lthough receiving additional compensation for work in excess of eighty hours may seem inconsistent with general notions of salaried status, it does not jeopardize salaried status as defined by the regulations."[6] Thus, plaintiffs overtime pay or their election of compensatory time is not inconsistent with their salary status.

### b. Reduction in pay

Exempt status requires that the employee be paid on a salary basis, which in turn requires that her compensation not be subject to reduction because of variations in the "quality or quantity of the work performed." 29 C.F.R. § 541.118(a) (1997). In determining whether an employee is subject to a reduction in pay, the Sixth Circuit held in *Michigan Ass'n of Governmental Employees,* that the court should focus on the language of the policy rather than its actual application, finding this approach (1) more consistent with the statutory language, and (2) more practical, given that:

[e]mployees subject to reduction in pay will, of course, attempt to avoid those reductions by juggling schedules and sacrificing non-work opportunities. Simply because a reduction in pay has never been applied does not mean that the employee has not been affected by

the policy subjecting the employee to pay reduction.

*Michigan Ass'n of Governmental Employees,* 992 F.2d at 86. Thus, the Sixth Circuit held that the policy itself is determinative of whether an employee is subject to impermissible reductions. However, the court went on to hold that where the policy language is infected with ambiguities, courts should look to the application of the policy to determine whether that policy should be construed as subjecting employees to impermissible deductions. *Id.*

In this case, plaintiffs bi-weekly amount of pay is subject to reductions for time not worked. Defendant considers time not worked lost time. Lost time is time without pay. Defendant's personnel coordinator, Susan MacPherson, agreed that employees only get paid for the time that they actually work or are able to cover through sick leave or personal leave. Ms. MacPherson responded to the following question:

Q. "if an employee only worked 79 hours and they weren't able to cover the other hour with personal time or sick time, they would just get 79 hours times their hourly pay; it that right?"

A. "That's correct."

In fact, plaintiff-Richardson's November 1, 1996 bi-weekly paycheck shows that she was paid for only 78.5 hours, not the predetermined salary. However, defendant is a governmental agency subject to principles of public accountability. 29 C.F.R. § 541.5d provides that public employees who otherwise qualify as salaried employees and are exempt from the overtime provisions of the FLSA will not be disqualified from their exempt status solely because they are subject to a pay reduction for lost time of less than eight hours. Since defendant is a municipal agency, it is clear that paying plaintiffs only for the time worked in the absence of sick leave or

---

**6.** The court of appeals went on to note that "[e]mployees are not paid on a salary basis if the predetermined amount is so far below

their actual compensation (calculated on an hourly basis) that the minimum is 'nothing more than an illusion.'" *Id.* at 84 n. 3.

personal leave is not conduct which puts the employee outside the professional exemption.[7] See *Michigan Ass'n of Governmental Employees*, 992 F.2d at 84.

Next, plaintiffs argue that defendant's discipline policy results in impermissible reductions in their pay. The Supreme Court recently stated that "employees whose pay is adjusted for disciplinary reasons do not deserve exempt status because as a general matter true 'executive, administrative, or professional' employees are not 'disciplined' by piecemeal deductions from their pay, but are terminated, demoted, or given restricted assignments." *Auer v. Robbins*, 519 U.S. 452, 117 S.Ct. 905, 909, 137 L.Ed.2d 79 (1997). The Supreme Court went on to hold that employees would be exempt from professional status when employees are covered by a policy that permits disciplinary or other deductions in pay "as a practical matter." *Id.* 117 S.Ct. at 911. "That standard is met if there is either an actual practice of making such deductions or an employment policy that creates a 'significant likelihood' of such deductions." *Id.* The Court's approach required "a clear and particularized policy—one which 'effectively communicates' that deductions will be made in specified circumstances." *Id.*

In this case, defendant's Personnel Policy Manual states that "violation of these work rules constitutes sufficient grounds for disciplinary action up to and including discharge depending on the seriousness of the offense." Plaintiffs offer no evidence of an actual practice of making pay deductions for work rule violations. Therefore, this Court must interpret defendant's work rule discipline policy to determine if it creates "a clear and particularized policy—one which 'effectively communicates' that deductions will be made in specified circumstances."

Although defendant's policy list specific work rules, it does not "effectively communicate" that pay deductions will be made in specified circumstances. *Id.* Furthermore, the manual does not specify that suspensions for workplace violations will be unpaid. Finally, the policy language is infected with ambiguities, and since there is no evidence of how the policy is actually applied, the disciplinary policy for work rule violation does not jeopardize the plaintiffs status as salaried employees exempt from the overtime regulations.

## V. CONCLUSION

Therefore, this Court finds that plaintiffs are not independent contractors, but employees who are exempt from the overtime regulations of the Fair Labor Standards Act because they are professionals paid on a salary basis. Accordingly, IT IS HEREBY ORDERED that plaintiffs' motion for summary judgment is DENIED, and defendant's motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that plaintiffs case is DISMISSED with prejudice.

IT IS SO ORDERED.

## *JUDGMENT*

IT IS ORDERED AND ADJUDGED that pursuant to this Court's Opinion and Order dated 4–8–99, this cause of action is DISMISSED with prejudice.

---

7. *But cf. Klein v. Rush–Presbyterian–St. Luke's Medical Ctr.*, 990 F.2d 279 (7th Cir.1993) (holding a nurse in private employment was not within the professional exemption).