Duane J. JASTREMSKI, Plaintiff,

v.

SAFECO INSURANCE COMPANIES, Defendant.

No. 3:01–CV–7382.

United States District Court,
N.D. Ohio,
Western Division.

Jan. 31, 2003.

Elizabeth Opper Kraemer, Mark S. Mester, Latham & Watkins, Chicago, IL, James P. Silk, Jr., Theodore M. Rowen, Spengler Nathanson, Toledo, OH, Robert J. Malionek, Latham & Watkins, Los Angeles, CA, Thomas Pfister, Lathem & Watkins, Chicago, IL, for Safeco Insurance Companies, American States Insurance Company, Defendants.

## ORDER

CARR, District Judge.

Plaintiff Duane Jastremski brings this case against defendant Safeco Insurance Companies ("Safeco"), alleging that Safeco failed to pay him for overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* This court has jurisdiction pursuant to 28 U.S.C. § 1331. Pending before this court are defendant's motion for summary judgment and plaintiff's cross-motion for partial summary judgment. For the following reasons, defendant's motion for summary judgment shall be granted, and plaintiff's cross-motion for partial summary judgment shall be denied.[1]

## BACKGROUND

Plaintiff was employed by defendant as an insurance adjuster, having formerly been employed by defendant's predecessor, American States Insurance Company, from 1977 to 1997. In 1997, defendant merged with American States. The result

Dennis E. Murray, Jr., Donna Jean A. Evans, Murray & Murray, Sandusky, OH, William F. Pietrykowski, Manahan, Pietrykowski, Bamman & DeLaney, Port Clinton, OH, for Duane J. Jastremski, Plaintiff.

1. This is a collective action under FLSA, 29 U.S.C. § 216(b), and also pending is plaintiff's motion for permission to notify similarly situated individuals of a right to opt into this case. Because plaintiff Jastremski's substantive FLSA claim lacks merit as a matter of law, he may not assert a claim under the FLSA for "similarly situated" employees, and his pending motion to notify similarly situated individuals shall, therefore, be denied.

Separately pending is plaintiff's motion to file a second amended complaint. The proposed amended complaint would refine plaintiff's argument about "similarly situated" individuals for purposes of the proposed collective action. Because plaintiff's motion to notify similarly situated individuals is denied, plaintiff would gain nothing by being allowed to amend his complaint in this manner. Plaintiff's motion to file a second amended complaint shall, therefore, be denied.

was an insurance company with more than 11,000 employees, including 1,600 insurance adjusters. After a transitional phase, plaintiff operated under defendant's claims-handling policies from 1999 until 2001. His last position with the defendant was senior claims representative.

Plaintiff's duties as a senior claims representative are not disputed. Plaintiff was assigned an insurance claim after it was reported. Plaintiff contacted the claimant, reviewed the policy to determine if the claimed loss was covered, determined the dollar value of the claim, told defendant the amount he determined as the value of the loss (called "setting a reserve"), and negotiated a settlement with the claimant.

Plaintiff had the authority to settle claims without prior approval of a manager if the total settlement was within his commitment authority. This authority was $10,000 for bodily injury claims and $5,000 for property claims in the beginning of 1999. Plaintiff could not authorize a check in excess of $15,000 without prior approval. Plaintiff handled about forty or fifty new claims per month; most were valued under $15,000.

Plaintiff was paid every two weeks. Each check was an equal portion of plaintiff's annual salary. Plaintiff worked 37.75 hours per week. The normal schedule was five days per week at 7.75 hours per day; this was known as the 10/80 schedule. Plaintiff also had the option of working an extra fifty minutes per day for nine days, and taking the tenth day off. This was known as the 9/80 schedule.

Defendant allotted plaintiff 115.25 hours of sick time and 188.75 hours of vacation time per year. This amount was reduced by the amount of time plaintiff took off work. Plaintiff reported absences from work in half-day or full-day increments.

Defendant classified plaintiff as an exempt administrative employee under the FLSA. Based on this classification, defendant did not pay plaintiff for any overtime worked. Plaintiff alleges he worked overtime.

Plaintiff brings this action under the FLSA, alleging that defendants violated 29 U.S.C. § 207(a)(1) by failing to pay him overtime, and seeking compensation for his alleged overtime at time and a half, plus an additional equal amount as liquidated damages. Defendant has moved for summary judgment. Plaintiff has filed a cross-motion for partial summary judgment on the issue of whether plaintiff was an exempt administrative employee.

## STANDARD OF REVIEW

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting FED. R. CIV. P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather,

Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

In deciding the motion for summary judgment, the evidence of the non-moving party will be accepted as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

## DISCUSSION

The FLSA's maximum hours requirement provides that an employee must receive overtime pay at a rate not less than one and one half times the regular rate if he or she works more than forty hours per week. 29 U.S.C. § 207(a)(1). The statute exempts from the maximum hours requirement "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).

 The employer bears the burden of proving that an employee is exempt.

*Douglas v. Argo–Tech Corp.*, 113 F.3d 67, 70 (6th Cir.1997).[2] The exemption is "narrowly construed against the employers seeking to assert [it]." *Id.* (citation and quotation omitted). Application of the exemption is limited to those circumstances plainly and unmistakably within the exemption's terms and spirit. *Id.* The question of how an employee spends his time is a question of fact, while the question of whether his activities fall within an exemption is a question of law. *Schaefer*, 197 F.Supp.2d at 939.

The term "bona fide administrative capacity" is not defined in the FLSA; rather, Congress delegated the responsibility of defining the term to the Secretary of Labor. *See* 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.2.

The FLSA's implementing regulations provide employers with two tests with which to prove that employees fall under the administrative exemption. The five-part "long test" applies to employees who are paid "on a salary or fee basis at a rate of not less than $155 per week." 29 C.F.R. § 541.2(e)(1). The three-part "short test," conversely, applies to those employees paid "on a salary or fee basis at a rate of not less than $250 per week." 29 C.F.R. § 541(e)(2).

The plaintiff was paid more than $250 per week, and the parties agree that the short test will determine whether he was an exempt administrative employee. The defendant must prove, by a preponderance

---

**2.** This court will use the "preponderance of the evidence" standard in determining whether the defendant has met its burden of proof. Although a Sixth Circuit court recently stated that an employer must establish an exemption through "clear and affirmative evidence," *Ale v. Tenn. Valley Auth.*, 269 F.3d 680, 691 n. 4 (6th Cir.2001), that articulation of the standard has been criticized as "of questionable origin" and characterized as "a different articulation of the preponderance of the evi-

dence standard." *Schaefer v. Indiana Michigan Power Co.*, 197 F.Supp.2d 935, 938 n. 3 (W.D.Mich.2002) (citation omitted). The "preponderance of the evidence" standard apparently was used in *Rutlin v. Prime Succession, Inc.*, 220 F.3d 737, 740 (6th Cir.2000) ("The employer bears the burden of proving that an employee fits into the exemption"). In any event, under either standard, the result is the same.

of the evidence, that: 1) it paid plaintiff on a salary or fee basis; 2) plaintiff's primary job duties consisted of the "performance of nonmanual work directly related to management policies or general business operations" of defendant; and 3) plaintiff's work "includes work requiring the exercise of discretion and independent judgment." 29 C.F.R. §§ 541.2(a)(1), (e)(2).

## A. Salary

■ Plaintiff argues that he was not paid on a salary basis, because his pay was subject to deductions for partial-day absences. Defendant argues that plaintiff's pay was not subject to partial-day deductions, and that he was, therefore, a salaried employee.

An employee is paid "on a salary basis" under the regulations:

if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.... [T]he employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked.

29 C.F.R. § 541.118(a); *see also* 29 C.F.R. § 541.212 (applying § 541.118 to administrative employees).

A salaried employee's pay may be docked if he or she violates safety rules of major significance. 29 C.F.R. § 541.118(a)(5). An employer also may deduct from a salaried employee's pay when the employee "absents himself from work for a day or more for personal reasons, other than sickness or accident." 29 C.F.R. § 541.118(a)(2). An employer also may deduct from the salaried employee's pay "for absences of a day or more occasioned by sickness or disability (including industrial accidents) if the deduction is made in accordance with a bona fide plan, policy or practice of providing compensation for loss of salary occasioned by both sickness and disability." 29 C.F.R. § 541.118(a)(3).

■ Deductions from pay for absences of less than a full day, however, are inconsistent with the definition of a salaried employee. *Michigan Ass'n of Governmental Employees v. Michigan Dep't of Corr.,* 992 F.2d 82, 84 (6th Cir.1993).

■ In *Auer v. Robbins,* 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997), the Supreme Court adopted the Secretary of Labor's interpretation of the "salary basis" test, holding that an employee may be classified as non-exempt if he or she is subject to disciplinary or other deductions from pay "as a practical matter." That standard is met where there is "either an actual practice of making such deductions or an employment policy that creates a 'significant likelihood' of such deductions." *Id.* Where there is no actual practice, the policy creating the "significant likelihood" must be "a clear and particularized policy—one which 'effectively communicates' that deductions will be made in specified circumstances." *Id.* This restriction is designed to "avoid[ ] the imposition of massive and unanticipated overtime liability (including the possibility of substantial liquidated damages ...) in situations in which a vague or broadly worded policy is nominally applicable to a whole range of personnel but is not 'significantly likely' to be invoked against salaried employees." *Id.* (citation omitted).

In *Auer,* for example, the Court decided that police sergeants and a lieutenant were salaried, though one employee actually had received a disciplinary pay deduction. *Id.* at 462. The employee manual nominally covered all departmental employees, and pay deductions were included in the manual's range of penalties. This did not, the

Court held, " 'effectively communicate' that pay deductions [were] an anticipated form of punishment for employees *in petitioners' category*." *Id.* The Court concluded that the manual's pay deduction penalties may have applied only to the non-salaried employees. "No clear inference can be drawn as to the likelihood of a sanction's being applied to employees such as petitioners," the Court stated, calling the one-time deduction of a sergeant's pay "unusual." *Id.* The result would have been different, the Court stated, if the manual explicitly provided that partial-day deductions applied only to employees such as the plaintiffs. *Id.*

The Sixth Circuit applied *Auer* in *Takacs v. Hahn Automotive Corp.*, 246 F.3d 776 (6th Cir.2001), finding that the company's policies created a significant likelihood that management employees would receive pay deductions due to disciplinary infractions. In that case, the employer had an actual practice of deducting from the employees' pay. The policy at issue provided that management employees were required to inform payroll representatives when they were suspended, so that their pay could be docked. This, the court stated, was an example of a disciplinary policy that "explicitly state[d] that members of management, not simply all employees, are subject to pay deductions due to disciplinary infractions." 246 F.3d at 781. Pay deductions for managers were, therefore, "more than a mere theoretical possibility." *Id.*

Conversely, in *Aiken v. City of Memphis*, 190 F.3d 753 (6th Cir.1999), the police department's disciplinary policies applied to all department employees, and therefore did not effectively communicate that plaintiffs, who were police captains, were subject to pay deductions. No captain ever had been suspended without pay, so there also was no actual practice of deductions. Together, these facts proved

that police captains were not, as a practical matter, subject to pay deductions. 190 F.3d at 762. *See also Richardson v. Genesee County Comm. Mental Health Servs.*, 45 F.Supp.2d 610, 617 (E.D.Mich.1999) (finding that employment policy was not clear and particularized and was not actually applied to allow impermissible deductions of employees' pay; employees were therefore salaried and exempt from the FLSA).

In this case, plaintiff acknowledges that he never actually received a partial-day deduction. He also has not offered proof that any employees in his category have received such deductions. Plaintiff argues, however, that his pay was subject to deductions for partial-day absences, based on certain sections of defendant's employee manual.

Plaintiff's argument is based on the sick leave and vacation sections of the defendant's employee manual. Defendant's employees accrued sick leave hours, and their leave account balances were replenished annually. They also could "carry over" unused balances into separate leave accounts. Sick employees could draw from leave balances in half-day or full-day increments. The vacation section outlined a similar leave policy. Employees accrued vacation time by annual grants, and they could draw from vacation time in half-day or full-day increments.

These policies provided for half-day deductions from accrued sick leave and vacation time, not half-day deductions from pay.

Plaintiff acknowledges this, but theorizes that if he used all of his accrued sick leave and vacation benefits within one year, and then took a partial sick day or vacation day, he would have had his pay docked for that partial day off work. He supports this theory with some language from the policies at issue. The sick leave

plan states that "[a]ny absence due to an illness that is not covered by sick leave, vacation, or [short-term or long-term disability], will be without pay." (Pl. Exh. 49 at 639). The vacation plan states that "if a terminating employee has taken more vacation than earned in a given year, the balance owed to Safeco must be recovered." (*Id.* at 648).

Plaintiff's argument is flawed. Neither the sick leave policy nor the vacation policy effectively communicated, in a clear and particularized manner, that exempt claims adjusters' pay would be docked for partial-day absences. The policies did not specifically provide that employees in plaintiff's classification would be subject to these deductions. Under *Auer* and *Aiken*, the plaintiff in this case was a salaried employee.[3]

Plaintiff argues that these clauses clearly applied to him, because they applied to all employees, and the manual states that "[f]or the purposes of this manual the term employee includes all salaried and hourly paid employees." (Pl. Exh. 49 at 588). However, this argument was rejected in *Auer*, in which the employee manual also nominally covered all departmental employees. The Court found this did not constitute a clear and particularized policy of deducting from the pay of exempt employees. 519 U.S. at 462, 117 S.Ct. 905.

Another clause of the manual, in fact, specifically states that plaintiff would not be subject to partial-day deductions. The manual states, in a section titled "Time Away From Work," that "[e]xempt employees are not subject to a reduction in pay for absences of less than a full work day unless the absence is due to a [Family and Medical Leave Act] qualified reason. Deductions may be made for whole-day absences in most instances." (Pl. Exh. 49 at 650).

Plaintiff argues that this language applies only to an employee's need to take off a few hours during the day for matters such as medical appointments, and does not apply to the sections on sick leave and vacation time. I disagree, and further find that even if this note does not apply to the sections on sick leave and vacation time, those sections still do not effectively communicate the clear and particularized policy required under *Auer*.

Plaintiff points to defendant's 9/80 plan as evidence that plaintiff was not a salaried employee. Plaintiff participated in the 9/80 plan until he was disciplined by being made ineligible for the program. He argues that this is evidence that he was treated like an hourly employee. However, payment under the 9/80 plan still was payment in a "predetermined amount," and plaintiff would suffer no "reduction because of variations in the quality or quantity of [the] work performed" under either plan. Plaintiff has not argued otherwise. Employers are allowed to impose non-monetary penalties to discipline salaried employees. "[A]n employee's exempt status is not affected when the employer

---

**3.** More authority for the finding that plaintiff was not subject to pay deductions for partial-day absences may be found in the pre-*Auer* decision in *Michigan Ass'n of Governmental Employees.* In that case, factually similar to this one, plaintiffs interpreted the employer's sick leave policy as stating that if they exhausted their leave credits and compensatory time, they would be subject to a reduction in compensation for absences of less than one day. 992 F.2d at 84–85. The policy at issue provided for "compensation reduction" for absences without leave credits. The defendant employer argued that it never intended to reduce pay for absences of less than a full day, and noted that it never had done so. 992 F.2d at 85. Finding that this explanation of the "ambiguous" sick leave policy was not "disingenuous or inconsistent with past actions or statements," the Sixth Circuit found the employees were salaried. 992 F.2d at 86.

makes non-monetary deductions for work absences from fringe benefits such as personal or sick time. . . . Rather, an employee's exempt status is lost only when the employer docks the employee's pay." *Schaefer*, 197 F.Supp.2d at 940–41 (citations omitted). Consequently, the defendant was allowed to impose the schedule change as a penalty without jeopardizing plaintiff's salaried status.

I find that defendant has met its burden of showing that plaintiff was a salaried employee, thus meeting the first prong of the short test determining FLSA exemption.

### B. Directly related to management policies or general business operations

■ In addition to receiving a salary instead of hourly compensation, an exempt administrative employee's primary job duty must consist of office or nonmanual work directly related to management policies or general business operations. 29 C.F.R. § 541.2(a)(1).

As a general rule, an employee's primary job duty is that which occupies more than 50 percent of his or her time. 29 C.F.R. § 541.103. The parties agree that plaintiff's primary duties included determining coverage and loss, and investigating, negotiating, and settling claims. The parties also agree that plaintiff's work was office or nonmanual in nature.

Job activities are "directly related to management policies or general business operations" if they "relat[e] to the administrative operations of a business as distinguished from 'production' or, in a retail or service establishment, 'sales' work." 29 C.F.R. § 541.205(a).

In addition to describing the types of covered activities, the phrase "directly related to management policies or general business operations" limits the exemption to "persons who perform work of substantial importance to the management or op-eration of the business of his employer or his employer's customers." 29 C.F.R. § 541.205(a).

#### 1. Administrative operations of the business

Job activities are "directly related to management policies or general business operations" if they "relat[e] to the administrative operations of a business as distinguished from 'production' or, in a retail or service establishment, 'sales' work." 29 C.F.R. § 541.205(a).

The regulations state that the administrative operations of the business include the work performed by white-collar employees who service the business by, "for example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control." 29 C.F.R. § 541.205(b). Plaintiff and defendant agree that he advised management of his findings on insurance claims, planned how to handle insurance claims, and negotiated binding settlements with claimants while representing the company. Based on this definition alone, his duties appear to be administrative in nature.

In fact, the regulations state that employees' job duties are "directly related to management policies or general business operations" if they work as "advisory specialists and consultants of various kinds, credit managers, safety directors, *claim agents and adjusters*, wage-rate analysts, tax experts, account executives of advertising agencies, customers' brokers in stock exchange firms, [and] promotion men." 29 C.F.R. § 541.205(c)(5) (emphasis added).

■ The regulations "must be given controlling weight." *Rutlin*, 220 F.3d at 741. The plain language of the regulations mandates a finding that plaintiff was an exempt administrative employee. While "[t]itles can be had cheaply," 29 C.F.R.

§ 201(b)(1), plaintiff's title, "senior claims representative," is not misleading. Plaintiff did in fact work as an insurance claims representative, and the regulations specifically provide that his job duties were directly related to management policies or general business operations. For some courts, this appears to be the end of the inquiry. *See Munizza v. State Farm Mutual Auto. Ins. Co.*, No. 95–35794, 1996 WL 711563, *4, 1996 U.S.App. LEXIS 32870, at *14 (9th Cir. Nov.7, 1996) ("There can be no real question" that claims adjuster responsible for negotiating and settling claims is an exempt administrative employee, based on 29 C.F.R. § 541.205(c)(5)).

██ Further support for this finding may be found in a recent opinion letter by the Department of Labor's Wage and Hour Division. The FLSA grants the Secretary of Labor broad authority to "define and delimit" the scope of the exemption for executive, administrative, and professional employees. 29 U.S.C. § 213(a)(1). On November 19, 2002, the Administrator of the Wage and Hour Division issued an opinion letter stating that insurance claims adjusters perform work that is administrative in nature, as distinguished from production or sales. Dept. of Labor WH Admin. Op. (Nov. 19, 2002), Daily Lab. Rep. (BNA), Nov. 20, 2002 (Doc. 90 Appx., Exh. 1).

██ An opinion of the Administrator of the Wage and Hour Division of the Department of Labor has persuasive value if the position of the Administrator is thoroughly considered and well reasoned. *Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294, 303 (6th Cir.1998); *Elwell v. Univ. Hosp. Home Health Care Servs.*, 76 F.Supp.2d 805, 808 (N.D.Ohio 1999). The United States Supreme Court in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944), stated:

We consider the rulings, interpretations and opinions of the Administrator under the [FLSA], while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*See also Fazekas v. Cleveland Clinic Found. Health Care Ventures, Inc.*, 204 F.3d 673, 677 (6th Cir.2000) ("[T]he written opinions of the Administrator or his deputies constitute the most reliable interpretations of the Department's regulations.").

Insurance claims adjusters described in the Labor Department letter had job descriptions nearly identical to that of the plaintiff in this case:

They are responsible for planning the processing of a claim from the beginning to the end, whether it is easily and quickly resolved or whether it proceeds to litigation. They represent the company and advise the management throughout the process of gathering the evidence, assessing credibility, reviewing the insurance policy, determining whether there is coverage, evaluating liability, making a decision on whether and how much to pay on the claim, establishing a reserve for the case, making a recommendation on claims above their established authority, and collaborating with the company's counsel if the case results in litigation. They also negotiate on behalf of the company with the claimant, whether the claimant is a policyholder or a third-party claimant. Because these duties involve servicing the insurance company in the same manner that

claims adjusters traditionally have done so, as is reflected in the regulatory reference to claims adjusters, we find that their duties are administrative in nature. WH Admin. Op. (Nov. 19, 2002) (Doc. 90 Appx., Exh. 1, at 4).

Plaintiff argues that his job duties did not exactly match those described in the opinion letter, because he did not handle product liability claims, personal injury claims, or claims involving litigation. However, his duties were identical in every other pertinent respect. In fact, his settlement authority was higher than some of the adjusters described in the letter, who had settlement authority of as little as $3,000.

The Wage and Hour Division's letter is a thorough, well reasoned, and accurate interpretation of the regulations at issue in this case. The facts are nearly identical, and the opinion letter is less than three months old. I find that this letter deserves deference.

Case law, much of which focuses on the so-called administrative/production dichotomy established in 29 C.F.R. § 541.205(a), also shows that plaintiff's duties were administrative in nature. In *Palacio v. Progressive Ins. Co.*, 244 F.Supp.2d 1040 (C.D.Cal.2002), the court found that plaintiff insurance claims representative was exempt from the FLSA. Her duties, like those of the plaintiff in this case, included advising management, planning, negotiating, and representing the insurance company. 244 F.Supp.2d at 1044–45. The court found that her job was administrative, not in production, because her job duties related to servicing the business, not providing goods or services. The insurance company was in the business of producing insurance policies, not settling claims. *Id.* Put another way, because plaintiff's job duties did not involve producing the company's products or services, plaintiff was classified as servicing the company's business, and was, therefore, an administrative employee. *Id. See also Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 9 (1st Cir.1997) (finding that an insurance company's products are its policies).

Plaintiff urges this court to find that defendant existed to produce settled claims, making plaintiff a non-exempt production employee. In support of that argument, he cites *Bell v. Farmers Ins. Exchange*, 87 Cal.App.4th 805, 105 Cal. Rptr.2d 59 (2001), in which the state appeals court found that plaintiff claims representatives were production employees and therefore not exempt from the FLSA. The facts of *Bell*, however, were quite different, because claims adjusting was "the sole mission" of the defendant company, which was one of several affiliated insurance companies. The defendant in *Bell*, therefore, produced nothing but settled claims; its adjusters were production workers. 105 Cal.Rptr.2d at 74.

In this case, however, plaintiff's department was one of several departments in one large insurance company. The vast majority of defendant's insurance policies did not result in claims in any given year. Additionally, to the extent that *Bell* suggests plaintiff was a production worker, I find that its limited persuasive authority is outweighed by Palacio and the Wage and Hour Division's letter, which provide ample support for my finding that plaintiff was an administrative employee.

**2. Work of substantial importance**

An administrative employee's job duties are "directly related to management policies or general business operations" only if they are of "substantial importance to the management or operation of the business of his employer or his employer's customers." 29 C.F.R. § 541.205(a).

The regulations provide:

As used to describe work of substantial importance to the management or oper-

ation of the business, the phrase "directly related to management policies or general business operations" is not limited to persons who participate in the formulation of management policies or in the operation of the business as a whole. Employees whose work is 'directly related' to management policies or to general business operations include those [whose] work affects policy or whose responsibility it is to execute or carry it out. The phrase also includes a wide variety of persons who either carry out major assignments in conducting the operations of the business, or whose work affects business operations to a substantial degree, even though their assignments are tasks related to the operation of a particular segment of the business. 29 C.F.R. § 541.205(c).

Plaintiff argues that he was not performing work of substantial importance to his employer, describing himself as a cog in a great machine. However, the regulations state that a large employer may need a large number of exempt administrative employees performing the same job. This does not affect the determination of whether they meet this test, "so long as the work of each such employee is of substantial importance to the management or operation of the business." 29 C.F.R. § 541.205(c)(6). Plaintiff's job duties affected business to a substantial degree, as contemplated by the regulations, because he was solely responsible for negotiating a large number of large settlements.

The regulations state that it "is not possible to lay down specific rules that will indicate the precise point at which work becomes of substantial importance to the management or operation of a business." 29 C.F.R. § 541.205(c)(1). As an example, the regulation states that a bank cashier performs work of substantial importance, while a bank teller does not.

An inspector, such as, for example, an inspector for an insurance company, may cause loss to his employer by the failure to perform his job properly. But such employees, obviously, are not performing work of such substantial importance to the management or operation of the business that it can be said to be 'directly related to management policies or general business operations' as that phrase is used in § 541.2. 29 C.F.R. § 541.205(c)(2).

If the employee's sole job is to "tabulate data, he is clearly not exempt." If the employee "makes analyses of data and draws conclusions which are important to the determination of, or which, in fact, determine financial, merchandising, or other policy, clearly he is doing work directly related to management policies or general business operations." 541.205(c)(3). Plaintiff was not an insurance inspector, but an insurance claims representative. While mistakes at his job would have caused loss to his employer, that is true of nearly any employee. Plaintiff's position involved much more than tabulating data and filling out forms; he analyzed data and drew conclusions with real consequences for his employer. Based on the plain language of the regulations, I find plaintiff performed work of substantial importance to his employer.

Further support for this conclusion may be found in the Labor Department's Wage and Hour Division opinion letter of November 19, 2002. In it, the Administrator found that the claims adjusters' duties were of substantial importance to the management or business operations of the employer. The adjusters in question had full and final authority to settle claims within their established settlement authority, which ranged from $3,000 to more than $50,000.

The adjusters also could:

recommend settlements in excess of their established authority, the majority of which are approved by their supervisors. Thus, they are not mere conduits for providing factual information to supervisors on claims in excess of their established authority. Rather, once supervisory approval of a particular settlement amount is provided, we understand that they play the same role in resolving such large claims as they do on those within their established authority.

. . . . .

[T]heir determinations regarding whether a particular incident is covered by a policy, and their determinations regarding liability and what the damages are, can result in extremely large financial consequences for the firm. Those steps are essential aspects of every claim processed, and they must be done correctly in order to assure that the insurance company pays what it is contractually obligated to pay, whether to a policyholder or a third party claimant. The claims adjuster also is responsible for setting the level of reserves for each claim, which is required for compliance with state law. If an audit reveals that adequate reserves have not been established, the state insurance commissioner may sanction the company. These responsibilities clearly are of substantial importance to the management or operation of the insurance company.

WH Admin. Op. (Nov. 19, 2002) (Doc. 90 Appx., Exh. 1, at 4, 5) (citing *Palacio*, 244 F.Supp.2d 1040).

4. This court is aware of the conflict within the Sixth Circuit as to how often an exempt administrative employee must exercise discretion and independent judgment. The Sixth Circuit in *Douglas* interpreted the short test as requiring an exempt employee to "customarily and regularly" exercise discretion and independent judgment. 113 F.3d at 70–71.

The plaintiff in this case had a settlement authority of $15,000, and the defendant employer had identical policies with regard to authorizing him to settle in even greater amounts. Like the claims adjusters described in the opinion letter, most of plaintiff's recommendations were accepted. Plaintiff also was responsible for determining coverage and setting reserves. Because I find the letter to be persuasive authority, as noted above, I find plaintiff's duties were of substantial importance to his employer.

Again, case law supports this finding. *See Palacio*, 244 F.Supp.2d at 1045–46 (the inclusion of claims agents and adjusters in the list at 29 C.F.R. § 541.205(c)(5) means either that claims agents and adjusters automatically meet "directly related" prong of short test, or else that claims adjusters meet the "substantial importance" component of "directly related" prong); *see also John Alden Life Ins. Co.*, 126 F.3d at 9 (claims agents and adjusters generally meet the "substantial importance" test); *Haywood v. N. Am. Van Lines, Inc.*, 121 F.3d 1066, 1072 (7th Cir. 1997) (employee who negotiated and settled claims performed work of substantial importance to employer). For these reasons, plaintiff performed work of substantial importance.

**C. Exercise of discretion and independent judgment**

The third prong of the short test requires a finding that the employee exercised "discretion and independent judgment." 29 C.F.R. §§ 541.2(e)(2).[4]

However, this requirement is found within the long test, not the short test, for the administrative exemption. 29 C.F.R. § 541.2(b). Subsequent district courts have noted this apparent oversight, *see, e.g., Schaefer*, 197 F.Supp.2d at 939 n. 4 (in the short test, the exempt employee must perform "work requiring the exercise of discretion and independent

The regulations state that the exercise of discretion and independent judgment "involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.207(a). Further, it means "that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance." *Id.*

The term "discretion and independent judgment":

> does not necessarily imply that the decisions made by the employee must have a finality that goes with unlimited authority and a complete absence of review. The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment . . .

29 C.F.R. § 541.207(e)(1).

The discretion and independent judgment must be "real and substantial" and "exercised with respect to matters of consequence." 29 C.F.R. § 541.207(d)(1). The term has been misapplied to cover "the use of skill in applying techniques, procedures, or specific standards" and "employees making decisions relating to matters of little consequence." 29 C.F.R. § 541.207(b). An employee is exercising skill when he

> applies his knowledge in following prescribed procedures or determining which procedure to follow, or who determines whether specified standards are met or whether an object falls into one or another of a number of definite grades, classes, or other categories, with or without the use of testing or measuring devices.

29 C.F.R. § 541.207(c)(1).

Examples include insurance inspectors, who decide whether to accept or reject an insurance risk based on prescribed standards; lumber graders, who grade commodities according to recognized standards; and personnel clerks, who screen job applicants according to standards set by their superiors. 29 C.F.R. § 541.207(c)(2), (4)-(5).

Plaintiff argues his discretion was limited by defendant's computer software programs. Plaintiff was required to enter information directly into a computer while simultaneously speaking to customers by telephone. Plaintiff alleges that the company selected the information it regarded as relevant and mandated that plaintiff complete the computer-generated template.

The regulations make clear that if an employee performs some non-exempt functions involving only the use of skill, but those functions are "directly and closely related to the employee's exempt functions," that employee remains exempt. 29 C.F.R. § 541.207(c)(5). For example, if instead of hiring a non-exempt personnel clerk to screen and interview job applicants, a company's personnel manager screens and interviews them, that manager will be exempt if he or she also hires the employees. The manager's hiring decision represents an exercise of discretion and independent judgment, and the screening and interviewing are directly

---

judgment" under 29 C.F.R. § 541.2(e)(2)), and have applied the correct short test. *Id.* at

947. This court will do the same.

and closely related to that exempt function. The regulations provide a second example involving computer programmers, noting that a programmer uses discretion and independent judgment "when he determines exactly what information must be used to prepare the necessary documents and by ascertaining the exact form in which the information is to be presented." 29 C.F.R. § 541.207(c)(7).

When plaintiff was assigned a claim, he verified coverage of the claim under the insured's policy, either using his own judgment or using the help of managers or underwriters. If the claim was covered, he usually planned how to investigate it. Plaintiff had discretion in deciding how to conduct the investigation, including gathering facts, interviewing witnesses, using field representatives, and compiling scene diagrams. Plaintiff also negotiated settlements to claims, and had discretion in deciding which negotiation tactic to use. Plaintiff had full authority to settle any claim within his commitment authority, with no supervisor approval. He was allowed to cut checks on behalf of Safeco for settlements up to his $15,000 commitment authority. When plaintiff believed claims should be settled in amounts above his commitment authority level, he forwarded recommendations to his supervisors. The supervisors usually accepted the recommendations and issued him authority to settle claims for the higher amounts.

While some of plaintiff's tasks perhaps called for the exercise of skill rather than the exercise of discretion, such tasks, involving little to no discretion, were directly related to those tasks in which he exercised a great deal of discretion. Filling out the computer-generated forms was ancillary to plaintiff's job duties involving the use of discretion and independent judgment. Under 29 C.F.R. § 541.207(c)(5), plaintiff remains an exempt administrative employee.

The Wage and Hour Division's recent opinion letter found that insurance claims adjusters exercised independent judgment and discretion. The opinion letter specifically rebuts plaintiff's argument that the defendant's standard computerized procedures for adjusting claims removed his independent judgment and discretion:

> [Claims adjusters] are not merely pursuing a standardized format for resolving claims, but rather are using their own judgment about what the facts show, who is liable, what a claim is worth, and how to handle the negotiations with either a policyholder or a third-party claimant in order to achieve a successful resolution.

WH Admin. Op. (Nov. 19, 2002) (Doc. 90 Appx., Exh. 1, at 5).

The Labor Department indicated that "[i]n prior letters relating to claims adjusters, we have indicated that this component requires a close review of the facts, because it is the criterion that is most likely to cause claims adjusters to fail to qualify for exemption." WH Admin. Op. (Nov. 19, 2002) (Doc. 90 Appx., Exh. 1, at 5).

There was no question that the claims adjusters at issue in the letter exercised discretion and independent judgment, however, because they:

> make all relevant decisions regarding coverage and liability, and they negotiate with full authority to attempt to achieve a settlement. Some of the adjusters have quite limited levels of authority, as low as $3,000. However, even those adjusters make recommendations to their supervisors on the appropriate value of much larger claims, which are frequently accepted.

WH Admin. Op. (Nov. 19, 2002) (Doc. 90 Appx., Exh. 1, at 5).

The facts in this case match these facts before the Wage and Hour Division Ad-

ministrator. As previously noted, I find the letter worthy of deference.

Case law also shows that plaintiff exercised independent judgment and discretion in the execution of his job duties. *See Blinston v. Hartford Accident & Indem. Co.*, 441 F.2d 1365, 1365–66 (8th Cir.1971) (claims adjuster for insurance company exercised independent judgment and discretion because he: 1) was almost completely unsupervised; 2) was encouraged by his employer to exercise discretion; 3) worked under only general supervision; and 4) had uncontrolled settlement authority of $3,000 per case, and most cases assigned to him were settled within this authority).

## CONCLUSION

Plaintiff was a salaried employee who performed office or nonmanual work that was directly related to Safeco's management or business operations. His work required him to exercise independent judgment and discretion. Consequently, plaintiff is an exempt administrative employee under 29 U.S.C. § 213(a)(1), and cannot invoke § 207(a)(1) in a claim for overtime pay, either on behalf of himself or on behalf of other employees under § 216(a).

**It is, therefore, ordered that:**

1) Defendant's motion for summary judgment be, and hereby is, granted;

2) Plaintiff's motion for partial summary judgment be, and hereby is, denied;

3) Plaintiff's motion for permission to notify similarly situated individuals be, and hereby is, denied;

4) Plaintiff's motion to file a second amended complaint be, and hereby is, denied.

**So ordered.**