**Glynn DOUGLAS, Plaintiff–Appellee/ Cross–Appellant,**

v.

**ARGO–TECH CORPORATION, Defendant–Appellant/ Cross–Appellee.**

**Nos. 95–3772, 95–3822.**

United States Court of Appeals, Sixth Circuit.

Argued Sept. 18, 1996.

Decided May 6, 1997.

Rehearing and Suggestion for Rehearing En Banc Denied June 19, 1997.

Steven D. Shafron (argued and briefed), Susan C. Margulies, Berkman, Gordon, Murray, Palda & DeVan, Cleveland, OH, for Plaintiff–Appellee/Cross–Appellant.

Carl H. Gluek (argued), Thomas Merritt Bumpass, Jr. (briefed), Thompson, Hine & Flory, Cleveland, OH, for Defendant–Appellant/Cross–Appellee.

Before: KEITH, SILER, and BATCHELDER, Circuit Judges.

BATCHELDER, Circuit Judge.

Defendant Argo–Tech Corporation appeals the district court's order granting summary judgment to plaintiff Glynn Douglas on his action for unpaid overtime. Douglas cross-appeals the denial of his claim for liquidated damages. Because Douglas was an exempt administrative employee, we **REVERSE** the grant of summary judgment for Douglas and **REMAND** this action to the district court with instructions to grant Argo–Tech's motion for summary judgment.

## I.  STATEMENT OF THE FACTS

Argo–Tech manufactures and assembles fuel pumps for both commercial and military aircrafts, along with torpedo and nuclear reactor parts for the United States Navy.

Douglas has been employed by Argo–Tech since 1986 in a variety of production capacities.

In October 1987, the National Labor Relations Board certified the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America and its Local Number 2262 (hereinafter "Union") as the collective bargaining representative of certain hourly employees of Argo–Tech. Consequently, the Union and Argo–Tech began negotiations for their initial collective bargaining agreement in November. Douglas was a member of the negotiating team. After more than thirty-five meetings, the parties reached a tentative agreement on January 30, 1988, which the Union membership ratified the next day.

An important subject of the negotiations was how Argo–Tech planned to compensate Union officers for the time they devoted to Union business. The parties agreed that the Union president and vice-president would have the right to devote their full-time efforts to the performance of Union duties. In other words, the president and vice-president would not engage in production work for Argo–Tech. The bargaining agreement also specified that Argo–Tech would compensate the Union president and vice-president at a rate of forty hours per week plus the average overtime worked by the employees in their home department. Argo–Tech calculated weekly compensation under this formula with reference to the officers' normal hourly wage rate. Argo–Tech also asked the Union officers to continue using the company's time clock for record-keeping purposes.

In May 1988, the Union membership elected Douglas vice-president of Local 2262. He served in that capacity until June 1991. As vice-president, Douglas had many responsibilities. For instance, Douglas handled employee grievances and worker's compensation claims. Douglas also served on a joint company-union staff committee and performed a variety of other functions to ensure that Argo–Tech followed the terms of the collective bargaining agreement. Douglas, however, performed no production work for Argo–Tech.

Once Douglas became Union vice-president, Argo–Tech ceased scheduling his hours and Douglas was free to come and go as he pleased. Argo–Tech did, however, advise the Union that it did not want Douglas in the facility on the weekends because weekend employees received premium wages and Argo–Tech believed that the presence of the Union vice-president might slow production. Douglas, despite these requests, continued to work on the weekends when he chose to, and Argo–Tech never disciplined him for doing so.

On many occasions during his tenure as Union vice-president, Douglas worked in excess of forty hours per week. When Douglas demanded that Argo–Tech pay him time-and-a-half for these overtime hours, Argo–Tech refused, citing the compensation provisions of the collective bargaining agreement. Thus, for those weeks in which Douglas worked overtime, he was compensated for forty hours at his regular rate of pay, plus an amount reflecting the average overtime worked by the employees in his home department.[1] Douglas was paid in accordance with this formula no matter how many hours he actually worked.

## II. PROCEDURAL HISTORY

After his term as vice-president ended, Douglas sued Argo–Tech alleging that Argo–Tech violated the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 (hereinafter "FLSA"), by refusing to pay him time-and-a-half for his overtime hours.[2]

Each of the parties moved for summary judgment. Argo–Tech argued that Douglas was an administrative employee who was paid on a salary basis, and as such, he was

---

1. Average overtime was computed by adding the total number of overtime hours worked in a week by the members of Douglas's home department, without counting Douglas or his hours, and dividing that figure by the total number of people in his home department.

2. Douglas also brought a state law claim pursuant to Ohio's wage and hour law, Ohio Rev.Code Ann. § 4111.03 (Anderson 1995). Because this section parallels the FLSA, we will approach the issues raised on appeal in a unitary fashion.

not entitled to overtime under the FLSA. Douglas claimed that he was not exempt from the FLSA and that Argo–Tech had willfully failed to pay him the overtime wages to which he was entitled.

The case was referred to a magistrate judge, who recommended that Douglas be granted summary judgment on his FLSA claim and awarded unpaid overtime for a two-year period. The magistrate judge also recommended that Argo–Tech's motion for summary judgment be denied. The magistrate, however, did not address Douglas's claim for liquidated damages.

Both parties filed objections to the magistrate's recommendations. The district court overruled these objections and entered an order adopting the magistrate's recommendations. Further, the district court ruled that Douglas was not entitled to liquidated damages under the FLSA. Both parties appeal the district court's order.

## III. DISCUSSION

### A. Standard of Review

■ We review *de novo* the district court's grant of summary judgment. *Moore v. Holbrook*, 2 F.3d 697, 698 (6th Cir.1993). The decision to deny a motion for summary judgment, while ordinarily reviewed for an abuse of discretion, is reviewed *de novo* when it is based on the resolution of a legal issue rather than on the presence of a material issue of fact for trial. *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363 (6th Cir.1993).

### B. The Fair Labor Standards Act and the Administrative Employee Exemption

■ Section 7(a) of the FLSA requires an employer to compensate an employee who works over forty hours a week "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). This right to overtime pay cannot be waived during the course of collective bargaining. *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 739–41, 101 S.Ct. 1437, 1444–45, 67 L.Ed.2d 641 (1981). Section 13(a) of the FLSA, however, entirely exempts from the overtime pay requirement any employee who is employed in a bona fide executive, administrative, or professional capacity. 29 U.S.C. § 213(a)(1). This exemption is to be "narrowly construed against the employers seeking to assert [it]." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960); *Michigan Ass'n of Governmental Employees v. Michigan Dep't of Corrections*, 992 F.2d 82, 83 (6th Cir.1993). Application of the exemption is limited to those circumstances plainly and unmistakably within the exemption's terms and spirit. *Arnold*, 361 U.S. at 392, 80 S.Ct. at 456. The employer bears the burden of proving that the exemption applies to the employee in question. *Michigan Ass'n of Governmental Employees*, 992 F.2d at 83.

Argo–Tech contends that the district court erred in granting Douglas summary judgment on his claim for unpaid overtime because Douglas was an exempt administrative employee. We agree.

Congress did not define the phrase "bona fide administrative capacity" in the FLSA, choosing instead to delegate that responsibility to the Secretary of Labor. *See* 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.2 (1996). Under the FLSA's implementing regulations, an employer may prove that an employee is an exempt "administrative employee" by satisfying a five part test, commonly known as the "long test." The long test applies to employees who are paid "on a salary or fee basis at a rate of not less than $155 per week." *See* 29 C.F.R. § 541.2(e)(1). The regulations, however, also create a "short test," described at 29 C.F.R. § 541.2(e)(2), which applies to employees who are paid "on a salary or fee basis at a rate of not less than $250 per week."

Because there is no question that Douglas was paid over $250 per week, we will apply the "short test" to determine whether Douglas falls within the administrative exemption. Under this test, Argo–Tech must prove that: (1) it paid Douglas on a salary or fee basis; (2) Douglas's primary job duties consisted of nonmanual work directly related to the management policies or general business operations of Argo–Tech; and (3) Douglas's job duties required him to customarily and regu-

larly exercise discretion and independent judgment. 29 C.F.R. § 541.2(a)(1), (e)(2).

### 1

■ Under the short test, Argo–Tech must first prove that Douglas was paid on a salary or fee basis. The regulations define "salary" as "a predetermined amount constituting all or part" of an employee's compensation which is "not subject to reduction because of variations in the ... quantity of the work performed." 29 C.F.R. § 541.118(a) (1996); *see also Michigan Ass'n of Governmental Employees v. Michigan Dep't of Corrections*, 992 F.2d 82, 84 n. 3 (6th Cir.1993). An employee is salaried even if his compensation consists of a guaranteed predetermined amount plus additional compensation. 29 C.F.R. § 541.118(b); *Michigan Ass'n of Governmental Employees*, 992 F.2d at 84 n. 3. Further, the Wage–Hour Administrator of the Labor Department has advised that hourly employees may be salaried if they are guaranteed a predetermined number of paid hours. *See* Opinion Letter No. 395 [1961–1966 Wages–Hours Transfer Binder] Lab. L. Rep. (CCH) ¶ 30,996.23 (Sept. 22, 1965); Wage & Hour Division, Field Operations Handbook § 22b03 (May 12, 1970); *see also Nairne v. Manzo*, No. 86–0206, 1986 WL 12934, at *3 (E.D.Pa. Nov.14, 1986).

Under the collective bargaining agreement, Douglas was guaranteed forty hours of pay each week, plus an amount equal to the average overtime worked by the employees in his home department. This guarantee was not subject to reduction based on the number of hours Douglas actually worked. Therefore, even on days when Douglas was not at Argo–Tech's facilities, or was present for less than eight hours, Argo–Tech still compensated him for an eight-hour day. If Argo–Tech's Payroll Department made a mistake and did not compensate Douglas for his guaranteed forty hours, all Douglas had to do was advise Thomas Rhodes, Argo–Tech's manager of employee relations, and Rhodes would promptly rectify the situation. Douglas can only cite one instance in his three-year tenure as Union vice-president where Argo–Tech did not pay him the guaranteed forty hours per week. According to Douglas,

there was one week when Argo–Tech deducted one-tenth of an hour from his pay. There is no evidence, however, that Douglas brought this aberration to Rhodes's attention so that Rhodes could correct the mistake.

■ Douglas argues that he was not a salaried employee because Argo–Tech requested that he continue using the company's time clock. This assertion is overly simplistic. Argo–Tech, as a government contractor, was required to keep records of the hours that employees were in the plant. Argo–Tech therefore asked the Union president and vice-president to continue using the time clock for record-keeping purposes. Unlike Argo–Tech's hourly employees, Douglas was not required to use the time clock, his compensation was not actually calculated on the basis of the hours on his time card, and he was not disciplined for failing to use the clock. Indeed, the record demonstrates that if Douglas was away from Argo–Tech's plant, or forgot to clock in, Argo–Tech's timekeepers were instructed to credit Douglas for that time. The fact that an employee uses a time clock, standing alone, does not preclude application of the administrative employee exemption. *See Michigan Ass'n of Governmental Employees*, 992 F.2d at 84 n. 3.

### 2

■ Under the second prong of the short test, Argo–Tech must prove that Douglas's primary duties consisted of nonmanual work directly related to management policies or general business operations. 29 C.F.R. § 541.2(a)(1), (e)(2) (1996). The phrase "directly related to management policies or general business operations" describes those types of activities relating to the administrative operations of a business, as opposed to production. 29 C.F.R. § 541.205(a) (1996). Administrative operations include advising management, planning, and negotiating. 29 C.F.R. § 541.205(b). This second prong limits the exemption's application to employees who perform work of substantial importance to the management or to the operation of the business. 29 C.F.R. § 541.205(a). The exemption, however, is not reserved for only those employees who formulate management policy. 29 C.F.R. § 541.205(c). It is enough

that an employee's work affects management policy, or that the employee has the responsibility to execute policy decisions. *Id.*

It is undisputed that Douglas, as Union vice-president, performed no production work for Argo–Tech. Rather, Douglas handled employee grievances and worker's compensation claims, served on a company-union staff committee, and performed other daily functions to ensure that Argo–Tech followed the terms of the collective bargaining agreement. These duties clearly have a direct relationship to Argo–Tech's policies and business operations and are substantially important to them. The determination of whether the Union would consider an action of Argo–Tech as a violation of the collective bargaining agreement and would decide to process a grievance must be viewed as having a substantial impact upon Argo–Tech's policies and business operations. Therefore, Douglas's interpretation of the collective bargaining agreement certainly influenced Argo–Tech's policies regarding its Union employees. Further, Douglas's duties were similar to those of a labor relations director, an exempt administrative employee specifically mentioned in the regulations. *See* 29 C.F.R. § 541.201(a)(2)(ii) (1996); *see also Anderson v. Federal Cartridge Corp.,* 62 F.Supp. 775, 784 (D.Minn.1945), *aff'd,* 156 F.2d 681 (8th Cir.1946).

Douglas argues, and the magistrate judge found, that because his loyalties were with the Union and not Argo–Tech and because his job was to further the interests of Union members, his duties were, by definition, not directly related to Argo–Tech's management policies or business operations. Implicit here is the assumption that Douglas's work could not benefit both the Union and Argo–Tech. This argument is unpersuasive. The applicable regulations state that the administrative exemption applies where an employee's duties are directly related to "management policies" or to the employer's "general business operations." 29 C.F.R. 541.2(a)(1) (1996). The FLSA and its implementing regulations do not mention, or make relevant in any manner, an employee's loyalties. The relevant inquiry is whether the employee's duties directly relate to management policies

or general business operations and are of substantial importance to them. The regulations make no mention of a requirement that in order to be exempt, an employee's work activities must benefit the employer. But if there were such a requirement, the district court erred in assuming that Douglas's work activities could not meet it. Benefit to the Union and benefit to Argo–Tech resulting from Douglas's activities are not mutually exclusive. At his deposition, Douglas explained that the purpose of his position was to "ensure a harmonious working relationship between … [Argo–Tech] and the bargaining unit employees." Douglas's efforts to ensure that Argo–Tech complied with the terms of the collective bargaining agreement and to assist Argo–Tech's production workers, while at times no doubt irksome to Argo–Tech management, provided Argo–Tech with a valuable service. A labor force secure in the belief that Argo–Tech is treating its members fairly and in accordance with the bargaining agreement is likely to be more productive. This is an obvious benefit to Argo–Tech.

### 3

■ To satisfy the final element of the short test, Argo–Tech must prove that Douglas customarily and regularly exercised discretion and independent judgment. 29 C.F.R. § 541.2(e)(2). As the applicable regulation makes clear, the exercise of discretion and independent judgment "involves the comparison and the evaluation of possible courses of conduct." 29 C.F.R. § 541.207(a) (1996). Moreover, the phrase "independent judgment" implies that the employee has the authority to make an independent choice, a choice free from immediate supervision, regarding matters of significance. *Id.*

It is clear that Douglas, as Union vice-president, exercised discretion and independent judgment regarding matters of significance. As previously stated, Douglas was responsible for handling employee grievances. In that capacity he had to evaluate employee complaints and decide on the proper course of action. Further, Douglas exercised his discretion in determining whether he would challenge certain Argo–Tech em-

ployment practices as being contrary to the bargaining agreement. Douglas does not argue, nor is there any evidence, that Argo–Tech directly supervised Douglas in the performance of his duties as Union vice-president.

The district court's decision leaves Argo–Tech in an impossible position. Because Douglas was not a production worker, Argo–Tech could not control the number of hours he worked or the activities he pursued while present at Argo–Tech's facilities. Indeed, if Argo–Tech were to attempt to control or limit Union officers' work schedules, then, as Union president Jim McTighe made clear, the Union would file a grievance or charge with the National Labor Relations Board against Argo–Tech. Consequently, if deemed non-exempt, Union officers such as Douglas would be able to spend as much time as they wanted at Argo–Tech's facilities, doing whatever they wanted, and earning time-and-a-half for doing so. This result would constitute a gross injustice.

For the foregoing reasons, we hold that Douglas was an administrative employee paid on a salary basis. Therefore, we hold that Douglas was not entitled to time-and-a-half for any overtime he worked during his tenure as Union vice-president. Because Argo–Tech did not violate the FLSA, Douglas is not entitled to liquidated damages.

## IV. CONCLUSION

We therefore **REVERSE** the grant of summary judgment in favor of Douglas and **REMAND** this action to the district court with instructions to grant Argo–Tech's motion for summary judgment.