JOHNSON, Appellant,

v.

**OHIO DEPARTMENT OF YOUTH SERVICES et al., Appellees.**

[Cite as *Johnson v. Ohio Dept. of Youth Serv.* (2000), 140 Ohio App.3d 774.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 00AP–677.

Decided Dec. 26, 2000.

*Wagoner & Steinberg, Ltd., C. William Bair* and *Thomas G. Overley,* for appellant.

*Betty D. Montgomery,* Attorney General, *Monique B. Lampke* and *Robert L. Griffin,* for appellee.

_____

TYACK, Judge.

On September 19, 1998, Erma Johnson filed a lawsuit in the Court of Claims of Ohio in which she alleged that she was entitled to receive pay for a significant quantity of overtime work performed in her capacity as a regional administrator for the Ohio Department of Youth Services ("DYS"). After service of process, DYS filed an answer in which it argued that Johnson was not entitled to the overtime pay because she was a salaried employee who was exempted from the overtime provisions of the Fair Labor Standards Act ("FLSA")[1] as implemented by pertinent provisions of the Code of Federal Regulations ("CFR").

DYS filed an unsuccessful motion seeking summary judgment. The trial court found that a genuine issue of material fact existed as to whether Johnson was or was not a salaried, overtime-exempt employee.

In November 1999, the lawsuit was ultimately tried before a judge of the Court of Claims. In May 2000, the trial judge rendered a decision holding that Johnson was a salaried, exempt employee and, thus, not entitled to payment for the overtime she had worked.

Johnson (hereinafter "appellant") has timely commenced a direct appeal, assigning two errors for our consideration:

*Assignment of Error No. 1*

"The trial court erred by concluding as a matter of law that earned compensatory time was not part of Ms. Johnson's salary under the applicable provisions of the Fair Labor Standards Act."

*Assignment of Error No. 2*

"The trial court erred when it concluded as a matter of law that deducting Ms. Johnson's earned compensatory time when she violated the work rule on tardiness was not a disciplinary deduction of salary for less than a day's absence from duty."

Because the two assignments of error involve common issues of law and fact, we address them jointly.

_____

1. The state of Ohio has adopted the criteria and standards for overtime exemptions established by the FLSA. R.C. 124.18(A).

In all respects pertinent to our resolution of this appeal, the facts here are not in dispute. Accordingly, the narrow issue before us is essentially one of law.

■ Pursuant to the FLSA, employers are generally required to pay overtime compensation for work performed in excess of forty hours per week. Section 207(a)(1), Title 29, U.S.Code. However, "any employee employed in a bona fide executive [or] administrative * * * capacity" is exempt from the overtime provision. Section 213(a)(1), Title 29, U.S.Code. It is well established that this exemption from overtime is to be narrowly construed. *Worley v. Cincinnati* (Aug. 25, 2000), Hamilton App. No. C–990506, unreported, 2000 WL 1209989, at *3, citing *Douglas v. Argo–Tech Corp.* (C.A.6, 1997), 113 F.3d 67, 70.

The parties agree that appellant's administrative position includes duties that would apparently qualify her as being "employed in a bona fide executive [or] administrative * * * capacity." However, the parties disagree as to the issue of whether appellant was paid a "salary" as required for exemption from overtime payment.

Speaking to the term "salary," Section 541.118(a), Title 29, C.F.R., reads:

"An employee will be considered to be paid 'on a salary basis' within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, *which amount is not subject to reduction because of variations in the quality or quantity of the work performed.* Subject to the exceptions provided below, *the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked.* This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work." (Emphasis added.)

DYS treats upper-level management in a manner that has an amalgam of features. Some of the features are consistent with upper-level managers, being considered overtime-exempt, salaried employees for purposes of the FLSA. Other features are more characteristic of the managers being considered hourly employees. For instance, all employees, regardless of responsibility or status, are expected to be on the job between the "core hours" of 8:30 a.m. and 4:30 p.m. If an employee arrives for work after 8:30 a.m., that employee is "docked" for being late. This practice is in obvious tension with the CFR provision set forth above.

The "core hours" policy of DYS mandates that an employee who arrives late is docked for the hours or partial hours she or he is late at an hourly rate, which is printed on the paperwork that accompanies her or his paycheck. If the employee wishes to avoid receiving a reduced paycheck, the employee can draw on

accumulated personal leave or compensatory ("comp") time. Appellant regularly drew against her accumulated compensation or comp time to avoid a reduction in her paycheck.

The whole concept of recording and banking comp time is in tension with the concept of overtime-exempt, salaried employees. If a person is paid to do the work, no matter what the time required on a given day, then there is no reason to keep track of and administer comp time. Yet, under certain circumstances, DYS kept track of the time worked in excess of forty hours per week and even had rules as to how long such comp time could be rolled over or banked. Comp time for appellant could be banked or rolled only for a period of six months. Further, she could earn comp time for only part of her duties.

At the same time, if appellant arrived "late" for work and was forced to use comp time for the time she arrived after 8:30 a.m., but then worked for a full eight-hour day, she effectively took the late time out of the bank at the beginning of the day only to re-deposit it at the end of the day. As a result, the concept of a "core" work day, in practice, is close to being an illusion.

On a number of occasions in 1997 and 1998, appellant arrived for work in the afternoon, with no apparent effect on her pay or work evaluations. Thus, the manner in which comp time was handled by DYS had the effect of allowing upper-level management to flex the work schedule to whatever hours the manager chose to work, provided he or she performed certain specific duties. Since upper-level managers such as appellant were never allowed to cash in the comp time literally, the actual practices used at DYS caused these managers to be treated more like overtime-exempt, salaried employees than would have been the case otherwise.

For most of its existence, the FLSA was not consistently applied to government employees. However, in 1985, the United States Supreme Court clearly stated in *Garcia v. San Antonio Metro. Transit Auth.* (1985), 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016, that the FLSA does apply to public employees. The United States Department of Labor ("DOL") has been struggling with the political and practical problems of implementing that decision ever since.

If we are bound only by the spirit of the federal regulations that have been forthcoming thus far, then the Court of Claims was correct in its resolution of the pertinent issues. In many ways, appellant was treated like an exempt, salaried employee. Her job responsibilities were also those of an overtime-exempt, salaried employee, as stipulated by both appellant and DYS.

Unfortunately, appellate courts cannot always decide cases on principles such as "if it looks like a duck, waddles like a duck, and quacks like a duck, it must be a duck." Appellate courts are bound to apply the actual, literal words of the

CFR. The words of the CFR compel a finding that appellant is not an overtime-exempt, salaried employee.

For appellant to be an overtime-exempt, salaried employee, she had to both exercise duties consistent with being an overtime-exempt employee and be paid in a way consistent with being an overtime-exempt employee. As noted above, her duties were consistent with being overtime exempt. However, the way DYS administers its payroll, especially in its attempts to enforce its core-work-hours policy and in its handling of comp time, is not consistent with its upper-level managers being paid as overtime-exempt employees under the CFR.

In 1991, the DOL issued an interim final regulation, which read:

"[A]n otherwise exempt public sector employee who is paid according to a pay system that requires the use of paid leave and, absent the use of paid leave, reduces the employee's pay for absences of less than one work-day, will not be disqualified from exemption due to such pay system." Section 541.5d, Title 29, C.F.R. See 56 F.R. 45825.

This interim regulation is as close as the DOL has come to approving payment systems such as that used by DYS for establishing managers such as appellant as overtime-exempt employees. However, even the interim order does not authorize the use of comp time (as opposed to paid leave) for a pay system. Comp time is not merely a form of paid leave. Comp time is earned on an hour-for-hour or minute-for-minute basis when an employee performs certain duties. Paid leave, on the other hand, is acquired based upon a statutory entitlement involving numbers of months or pay periods worked. The two are similar but not the same. For example, the state of Ohio does not allow a person to increase his or her personal leave by working more than forty hours per week.

In 1992, the DOL issued its final version of Section 541.5d, Title 29, C.F.R., which reads:

"(a) An employee of a public agency who otherwise meets the requirements of [Section] 541.118 shall not be disqualified from exemption under [Sections] 541.1, 541.2, or 541.3 on the basis for such employee is paid according to a pay system established by statute, ordinance, or regulation, or by a policy or practice established pursuant to principles of public accountability, under which the employee accrues personal leave and sick leave and which requires the public agency employee's pay to be reduced or such employee to be placed on leave without pay for absences for personal reasons or because of illness or injury of less than one work-day when accrued leave is not used by an employee because—

"(1) permission for its use has not been sought or has been sought and denied;

"(2) accrued leave has been exhausted; or

"(3) the employee chooses to use leave without pay."

Again, the regulation addresses the use of personal leave and sick leave to avoid the loss of pay, but is silent as to comp time. This final regulation liberalized the standards for when a state employee can be considered an overtime-exempt employee by addressing situations involving absences of less than a full work day. However, the exemption from disqualification applies only where accrued personal leave and/or sick leave are substituted for time absent, not where comp time is used in place of time missed. Again, the whole concept of comp time is foreign to the DOL's concept of an overtime-exempt, salaried employee.

In short, appellant's job as regional administrator causes her to look like the duck of overtime-exempt employees, waddle like that duck, and quack like that duck. However, the DOL, through the CFR, has stated that she is not that duck but some other breed of bird or fowl. Again, we are bound by what the CFR states.

■ Applying the foregoing analysis to the actual propositions of law before us, we hold that the trial court erred in finding that, as a matter of law, appellant's earned "comp time" is not part of her compensation as a whole or "salary." On those days when appellant arrived late for work, her regular pay was not affected when she availed herself of the comp time she had earlier accrued. In the alternative, excluding from consideration the use of other "leave" (sick leave, personal leave, vacation leave), her compensation would be reduced if she did not arrive at work by 8:30 a.m., the "core" start time. Her earned comp time was clearly part of her compensation package for purposes of the FLSA.

Given the foregoing, the first assignment of error is sustained.

■ Turning to the second assignment of error, we are hesitant to say that the automatic deduction from comp time that occurred when appellant arrived late for work was a form of "disciplinary action." The record reveals that the system in place, as explained above, was more a matter of how DYS paid its upper-level employees when the employees arrived for work after the beginning of the core-work starting time. We believe that the trial court was within its discretion to find as a matter of fact that no disciplinary deduction of salary occurred.

The second assignment of error is therefore overruled.

In sum, the first assignment of error is sustained. The second assignment of error is overruled. The judgment of the trial court is reversed, and the cause is

remanded with instructions to enter judgment for appellant Johnson and to conduct a hearing to determine the appropriate damages.

*Judgment reversed*
*and cause remanded with instructions.*

BOWMAN, P.J., and PETREE, J., concur.