*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0050P (6th Cir.)
File Name: 04a0050p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

MICHAEL L. SCHAEFER,
    *Plaintiff-Appellant,*

v.

No. 02-1401

INDIANA MICHIGAN POWER
COMPANY, d/b/a AMERICAN
ELECTRIC POWER,
    *Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 00-00559—Gordon J. Quist, District Judge.

Argued: September 18, 2003

Decided and Filed: February 13, 2004

Before: SUHRHEINRICH, COLE, and ROGERS, Circuit
Judges.

———————————

## COUNSEL

**ARGUED:** Stephen D. Turner, LAW, WEATHERS &
RICHARDSON, Grand Rapids, Michigan, for Appellant.
Joseph J. Vogan, VARNUM, RIDDERING, SCHMIDT &

HOWLETT, Grand Rapids, Michigan, for Appellee.
**ON BRIEF:** Stephen D. Turner, Gregory N. Longworth,
LAW, WEATHERS & RICHARDSON, Grand Rapids,
Michigan, for Appellant. Joseph J. Vogan, Peter Smit,
Elizabeth Wells Skaggs, VARNUM, RIDDERING,
SCHMIDT & HOWLETT, Grand Rapids, Michigan, for
Appellee.

COLE, J., delivered the opinion of the court.
SUHRHEINRICH, J. (pp. 19-21), delivered a separate
concurring opinion. ROGERS, (p. 22), delivered a separate
dissenting opinion.

———————————

## OPINION

———————————

R. GUY COLE, JR., Circuit Judge. Plaintiff-Appellant
Michael L. Schaefer appeals the district court's grant of
summary judgment in favor of his employer, Indiana
Michigan Power Company, d/b/a American Electric Power
("AEP"), and the denial of his motion for summary judgment,
in this action alleging that AEP violated the Fair Labor
Standards Act (the "FLSA"), 29 U.S.C. §§ 201-219, by
failing to pay Plaintiff for overtime work at one-and-a-half
times his normal hourly rate as required by 29 U.S.C.
§ 207(a)(1). The central issue on appeal is whether the
district court erred in granting summary judgment in favor of
AEP based on its conclusion that Plaintiff's position as an
environmental specialist at AEP is properly classified as
exempt under the administrative exemption of the FLSA. For
the following reasons, we **REVERSE** the decision of the
district court granting summary judgment to AEP and
**REMAND** for further proceedings.

# I. BACKGROUND

Indiana Michigan Power Company, doing business as American Electric Power ("AEP"), operates the Cook Nuclear Plant ("Cook") in Bridgman, Michigan, where Plaintiff-Appellant Michael L. Schaefer is employed. AEP produces electricity at Cook through nuclear reaction. Schaefer began his employment at Cook as a "radiation protection technician, junior," in 1987. Through promotion and company reorganization, Schaefer has subsequently held the positions of radiation protection technician, engineering technologist, radioactive material specialist, and environmental specialist. Schaefer is a "qualified shipping specialist" under Department of Transportation regulations. Although Schaefer, who is paid a yearly salary, has worked in positions classified as exempt from FLSA overtime requirements by AEP since 1988, he nonetheless received time-and-a-half overtime pay for hours in excess of forty hours in a given workweek until 1997. Beginning in 1997, AEP began to pay only straight overtime under its exempt-overtime plan, and in 1999 the plan was changed so that overtime generally did not begin until after 45 hours were worked in a given workweek.

The parties disagree regarding the nature of Schaefer's daily activities. AEP argues that Schaefer "has overall responsibility for the waste disposal program." AEP points out that Schaefer has responsibility for various activities in addition to actual shipping, such as writing and revising procedures, preparing position papers, investigating corrective actions, and surveying other nuclear facilities as to how they deal with radioactive waste. In support of its position, AEP primarily relies on AEP's written job description for the position of environmental specialist; the testimony of Schaefer's supervisor, Jeffrey H. Long; various job performance reviews; and Schaefer's own resume. These sources generally portray Schaefer as a white-collar employee who performs his job independently; makes recommendations regarding various aspects of the shipping process; has an important role in assuring AEP's compliance with various

federal and state regulations and primary responsibility for developing procedures to implement these regulations; and supervises the manual tasks involved in shipping radioactive materials.

Schaefer's deposition testimony presents a different picture of his day-to-day activities. He claims that eighty percent of his time is spent on tasks related to actual shipments of radioactive materials and waste. These tasks include setting up the shipment with the transporter and the waste management facility; determining the type and method of packaging to be used; preparing shipping documents such as manifests; and inspecting packaging containers, trucks, load bracings, and truck signage. Schaefer claims that he does not often exercise discretion or independent judgment when working on shipments because the work is tightly governed by federal regulations and company procedures. He acknowledges that some of his other tasks sometimes require the exercise of discretion and independent judgment, but he maintains that he performs such tasks much less frequently than AEP indicates and that the exercises of discretion are much more limited than AEP contends. Finally, Schaefer disputes AEP's job description and performance reviews: He testified in his deposition that those documents cover activities that he does not actually perform and do not accurately reflect his day-to-day responsibilities. He also claims that he embellished his own resume to include more responsibility and authority than he actually exercises.

## II. DISCUSSION

### A. Standard of Review

This Court reviews de novo a district court's grant of summary judgment. *Stephenson v. Allstate Ins. Co.*, 328 F.3d 822, 826 (6th Cir. 2003). Summary judgment is appropriate if, examining the record and drawing all inferences in a light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled

to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992).

## B. The Fair Labor Standards Act and the Administrative Exemption

The Fair Labor Standards Act requires employers to pay their employees time-and-a-half for work performed in excess of forty hours per week. 29 U.S.C. § 207(a)(1). The FLSA, however, exempts employers from this requirement with respect to individuals "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). "This exemption is to be 'narrowly construed against the employers seeking to assert [it],'" *Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 70 (6th Cir. 1997) (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)), and the employer bears not only the burden of proof, but also the burden on each element of the claimed exemption. *Arnold*, 361 U.S. at 392.

To prove that Schaefer is a bona fide administrative employee under the applicable Department of Labor ("DOL") regulations (described as the "short test"), AEP must demonstrate that: (1) the employee is "compensated on a salary or fee basis at a rate of not less than $250 per week"; (2) the employee's "primary duty consists of . . . [t]he performance of office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers"; and (3) the employee's primary duty "includes work requiring exercise of discretion and independent judgment." 29 C.F.R. §§ 541.2, 541.214.

### 1. Salary Basis

AEP must first establish that it pays Schaefer on a salary or fee basis. 29 C.F.R. § 541.2(e)(2); *Douglas*, 113 F.3d at 70. DOL regulations provide that an employee is paid on a salary basis "if under his employment agreement he regularly

receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.118(a).

Although Schaefer is paid a yearly salary, he argues that AEP does not treat him as a salaried employee because he must account for at least forty hours of work each week on his time sheet and must make up partial-day absences by either working extra hours on another day or using part of a vacation day. Exempt status, however, is only affected by monetary deductions for work absences and not by non-monetary deductions from fringe benefits such as personal or sick time. *See Haywood v. N. Am. Van Lines, Inc.*, 121 F.3d 1066, 1070 (7th Cir. 1997). Schaefer has presented no evidence to contradict AEP's showing that it does not dock employees' pay for partial-day absences. Moreover, Schaefer admitted in his deposition that he has never been docked pay for partial-day absences. Accordingly, the district court correctly concluded that AEP satisfied its burden of showing that Schaefer was paid on a salary basis.

### 2. Office or Nonmanual Work Directly Related to Management Policies or General Business Operations of the Employer

Next, AEP must show the absence of a material factual dispute over whether Schaefer's "primary duty" consists of the "performance of office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers." 29 C.F.R. §§ 541.2(a)(1), (e)(2), 541.214. Accordingly, we must first analyze Schaefer's "primary duty." We focus on evidence regarding the actual day-to-day activities of the employee rather than more general job descriptions contained in resumes, position descriptions, and performance evaluations. *Ale v. Tennessee Valley Authority*, 269 F.3d 680, 688-89 (6th Cir. 2001). Neither the job description that Schaefer wrote

for his resume nor Schaefer's failure to dispute AEP's position descriptions or performance evaluations prior to this lawsuit preclude him from arguing that his day-to-day activities differ from those described in these documents – such actions merely raise credibility questions for the factfinder. Indeed, we have recognized that "resumes may not provide the most accurate picture of an employee's job because resumes are typically 'designed to enhance the employee[']s duties and responsibilities in order to obtain a job.'" *Id*. at 689 n.2. Here, the deposition testimony appears to provide a more detailed window into Schaefer's day-to-day activities.

Schaefer's tasks can be grouped into two categories: (1) tasks relating to actual, specific shipments of radioactive materials and waste, and (2) tasks relating to the maintenance of the waste disposal program as a whole. The DOL regulations provide that "[i]n the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time." 29 C.F.R. §§ 541.103, 541.206(b). Schaefer contends that he spends roughly eighty percent of his time dealing with the preparation of shipments and the remaining twenty percent of his time on other tasks – some of which may also relate to preparation of specific shipments – including condition reports, procedural revisions, and position papers. Because we view the evidence in the light most favorable to Schaefer, we accept his contention that he spends the majority of his time working on actual shipments of radioactive materials and waste.[1]

---

[1] Two of AEP's experts' reports and Long's deposition provide three alternative breakdowns of Schaefer's time. It is not clear from the record whether this indicates disagreement with Schaefer's breakdown, or merely a focus on a different period of time. Cook was offline for approximately three years, roughly between 1998 and 2000. That is, the nuclear reactors were shut down but the plant remanded open while work was done on the reactors. As a result of the increased work on the reactors, the number of contaminated items – protective clothing, tools, replaced parts – requiring

"Time alone, however, is not the sole test . . . ." 29 C.F.R. §§ 541.103, 541.206(b). A job duty that occupies less than fifty percent of the employee's time can still be the primary duty if that duty is of principal importance to the employer or if the other duties performed are collateral to that duty. *Rutlin v. Prime Succession, Inc.*, 220 F.3d 737, 742 (6th Cir. 2000). Yet AEP has not argued that Schaefer's non-shipping tasks are more important than shipping or that shipping is merely collateral to these tasks. AEP argues only that these other tasks are "equally important" to shipping. Even if AEP had submitted evidence sufficient to support this proposition, the contention is not sufficient to trump the fifty-percent "rule of thumb" set forth in 29 C.F.R. § 541.103.

*a. Nonmanual*

To meet the exemption such that AEP need not pay him time-and-a-half for overtime, Schaefer's primary duty must consist of "nonmanual work directly related to management policies or general business operations." Although an exempt employee can perform some manual work without losing exempt status, "if the employee performs so much manual work (other than office work) that he cannot be said to be basically a 'white-collar' employee he does not qualify for exemption as a bona fide administrative employee . . . ." 29 C.F.R. § 541.203(a).

The evidence, viewed in the light most favorable to Schaefer, supports his contention that he spends *some* of his time performing manual tasks outside the office but this

---

shipment also greatly increased, so the focus of Schaefer's job shifted more firmly to shipping during that time. This lawsuit, filed on July 31, 2000, covers conduct dating back to July 31, 1998 or, if willfulness is found, July 31, 1997.

We offer no opinion on whether our result would be the same if actual shipments became a substantially less significant part of Schaefer's job; presumably at some point the "primary job duty" would shift to maintenance of the program.

amount of time is not so much that he no longer qualifies for the exemption. Schaefer admits that for the past few years he has spent fifty percent of his time at his desk and that he currently spends greater than eighty percent of his time at his desk. Even when he is away from his desk, he does not spend all of his time on manual tasks. Although Schaefer spends some of this time inspecting trucks, examining load bracings, inspecting shipping containers, and examining shipping labels, these "inspection" tasks – even if not performed at his desk – are nonetheless not manual tasks. Schaefer performs manual tasks when he actually picks up a hammer to brace a load or installs or tightens a strap. Accordingly, Schaefer does not spend so much of his time on these manual tasks so as to fall outside exempt status.

### b. Directly Related to Management Policies or General Business Operations

To qualify for the exemption, Schaefer's primary duty must also be "directly related to management policies or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.214. This provision, in addition to describing the types of activities performed by an exempt employee, "limits the exemption to persons who perform work of substantial importance to the management or operation of the business of his employer or his employer's customers." 29 C.F.R. § 541.214(a).

AEP urges us to conclude that Schaefer is an administrative employee simply because he is not involved in the direct production of electricity. 29 C.F.R. § 541.205(a) does distinguish administrative work from production work, and a number of courts have applied an administrative versus production analysis, sometimes referred to as the administrative/production dichotomy, to the issue. *See, e.g., Dalheim v. KDFW-TV*, 918 F.2d 1220 (5th Cir. 1990). AEP argues that Schaefer does not fall on the "production" side of this so-called dichotomy because "the Appellant is overseeing the shipment of radioactive waste in a company that is not in

the business of shipping radioactive waste, but instead is in the business of producing electricity." Appellee's Brief at 40. According to AEP, since Schaefer's work is collateral to the production of electricity, he is *therefore* doing administrative work. We reject this contention.

Work related to waste disposal is not necessarily "administrative" work as that term is commonly understood. The very nature of AEP's business at Cook – the production of electricity by nuclear reaction – entails very complex waste issues that require types of employees that a more traditional factory would not require. Such employees do unique work which, although not part of production proper, is also not "administrative" or part of "servicing the business." The problem posed by the dichotomy is not limited to waste. For example, Long testified that the employees who wear protective clothing and work in areas of active contamination are not production workers: "I guess if – if you want to say direct production of electricity, I would think of – of the operators. The majority of these people [who wear the protective gear] are probably in maintenance." J.A. 126.

As this case indicates, the administrative versus production analysis does not fit all cases. The analogy – like various other parts of the interpretive regulations – is only useful to the extent that it is a helpful analogy in the case at hand, that is, to the extent it elucidates the phrase "work directly related to the management policies or general business operations." *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1126 (9th Cir. 2002); *see also Shaw v. Prentice Hall Computer Publ'g, Inc.*, 151 F.3d 640, 644 (7th Cir. 1998) (noting that the administrative/production dichotomy is to be used only to the extent that it is a helpful analogy in the case at hand). This dispute must therefore be resolved using other analytical tools set out in the regulations for resolving this question.

29 C.F.R. § 541.205(b) provides further guidance on the "types" of work that are administrative: "The administrative operations of the business include the work performed by so-

called white-collar employees engaged in 'servicing' a business as, for example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control." We cannot conclude, without more from the employer, that shipping radioactive materials is in the same category as "advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control." The fact that some shipments are unique or challenging does not convert them into "servicing the business" or make them "directly related to management policies or general business operations." An inquiry into whether the work is of a routine nature is relevant for determining whether the administrative work is of "substantial importance" to the employer – not whether the work is actually of an administrative nature.

Where Schaefer is asked to do benchmarking or make recommendations regarding how AEP should deal with an unusual shipment, those aspects of the task might qualify but they do not suffice to change the nature of the actual shipping work and are too infrequent by either party's account to form the basis for finding that Schaefer's "primary job duty consists of . . . work directly related to management policies or general business operations." Similarly, some of Schaefer's other tasks – for example, writing or updating procedures and preparing an annual scaling factor report – appear to meet the "directly related" requirement, but they are not part of Schaefer's primary job duty. *See supra.* Because Schaefer's primary job duty is not "directly related," we need not address whether it is of substantial importance to AEP.

Thus, genuine issues of material fact exist as to whether Schaefer's primary duty is "directly related to management policies or general business operations of the employer or the employer's customers."

### 3. Discretion and Independent Judgment

Even if AEP could meet its burden in proving that Schaefer's primary duty consists of the "performance of office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers," AEP must also prove that Schaefer customarily and regularly exercised discretion and independent judgment in the performance of his primary duty. 29 C.F.R. §§ 541.2(e)(2), 541.214(a); *Douglas v. Argo-Tech Corporation*, 113 F.3d 67, 72 (6th Cir. 1997). AEP has argued that the "short test" requires only occasional exercises of discretion and independent judgment rather than "customary and regular" exercises. Yet *Douglas*, in which we articulated the "customarily and regularly" requirement, is binding on this panel. *See Moltan Co. v. Eagle-Picher Industries, Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) ("We cannot overturn the prior published decision of another panel and are therefore bound by these previous decisions."). In any event, if we were to accept AEP's contention, then *any* minimal amount of discretion would satisfy this prong and nonexempt employees given as examples in the regulations, such as bank tellers and book keepers, would potentially be swept into the exemption upon performance of an occasional discretionary task.

There are genuine issues of material fact regarding the extent to which Schaefer actually exercises discretion and independent judgment. According to 29 C.F.R. § 541.207(a): "In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." The regulations also distinguish the exercise of discretion and independent judgment from use of skill or application of knowledge:

Perhaps the most frequent cause of misapplication of the term "discretion and independent judgment" is the failure

to distinguish it from the use of skill in various respects. An employee who merely applies his knowledge in following prescribed procedures or determining which procedure to follow, or who determines whether specified standards are met or whether an object falls into one or another of a number of definite grades, classes, or other categories, with or without the use of testing or measuring devices, is not exercising discretion and independent judgment within the meaning of § 541.2. This is true even if there is some leeway in reaching a conclusion, as when an acceptable standard includes a range or a tolerance above or below a specific standard.

29 C.F.R. §541.207(c)(2).

Schaefer contends that his shipping-related tasks do not require the exercise of discretion or independent judgment within the meaning of the regulations. Specifically, Schaefer argues that many of his tasks are so heavily regulated by DOT regulations, Nuclear Regulatory Commission regulations, state regulations, and company procedures, that his primary duty requires little or no exercise of discretion or independent judgment. The district court rejected this argument on the ground that "it could apply to almost anyone in the nuclear power industry." *Schaefer v. Ind. Mich. Power Co.*, 197 F.Supp.2d 935, 948 (W.D. Mich. 2002). We disagree with the district court's analysis. Each person in the industry, including Schaefer, must be individually examined in order to determine whether he or she actually exercises discretion and independent judgment. The fact that the industry is heavily regulated may indeed mean that a facility like Cook may employ fewer individuals who actually exercise discretion. Cook employs a different type of employee – those who can follow regulations – than it would have to employ in the absence of the regulations – that is, those who could make the kinds of decision made by those who write the various regulations. The very purpose of such detailed regulations and procedures is to create conformity which has the practical effect of minimizing discretion. We must, therefore, examine

whether Schaefer, constrained by regulations, actually exercises discretion and independent judgment. *See Ale*, 269 F.3d at 687.

AEP also argues that there are gaps in the regulations that Schaefer must "bridge" using his discretion and independent judgment. AEP offers several examples of "decisions" or "judgments" made by Schaefer when applying the regulations, yet each only entails the application of skill or knowledge rather than the exercise of discretion or independent judgment. It is not enough to merely latch on to words like "decision," "recommendation," "judgment," or "determine" in the procedures and in Schaefer's deposition testimony. *Cf. Ale*, 269 F.3d at 691 ("The words 'in charge' are not a magical incantation that render an employee a *bona fide* executive regardless of his actual duties.").

Indeed, the term "exercise of discretion and independent judgment" as it appears in the regulations has a specific meaning which excludes "the use of skill" and the application of "knowledge in following prescribed procedures or determining which procedure to follow, or . . . determin[ing] whether specified standards are met or whether an object falls into one or another of a number of definite grades, classes, or other categories." Many of AEP's examples either are of simple decisions that do not require the exercise of discretion within this definition or involve procedures that provide more guidance than AEP implies. For example, a material either does or does not have a specific activity level of less than 70 Bq/gram (0.002 μCi/gram) for purposes of determining what shipping procedures will govern. Likewise, blocking and bracing a load is an exercise of skill rather than discretion.[2]

---

[2] *Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900 (6th Cir. 2002), is inapposite because it involves the Motor Carriers Act ("MCA") exemption from the FLSA. The MCA allows the Secretary of Transportation to regulate the hours of loaders. In *Vaughn*, the Court found that blocking freight and loading it high and tight met the MCA "judgment and discretion" requirement. *Id*. at 904. "Judgment and

AEP additionally argues that there are times when a package could be classified in more than one shipping category under the regulations. Long, however, testified that Cook had a preferred method of selecting the least restrictive classification, and AEP has presented no evidence that Schaefer exercised his discretion and diverged from the preferred method.

Nor is the mere fact that Schaefer has extensive knowledge of the regulations sufficient to turn their application into exercises discretion and independent judgment. 29 C.F.R. § 541.207(c)(3) specifically states that "[o]ften, after continued reference to written standards, or through experience, the employee acquires sufficient knowledge so that reference to written standards is unnecessary. The substitution of the employee's memory for the manual of standards does not convert the character of the work performed to work requiring the exercise of discretion and independent judgment." Rather, Schaefer "merely applies his knowledge in following proscribed procedures or determining which procedures to follow" and "determines whether specified standards are met." 29 C.F.R. § 541.207(c)(1).

AEP has not demonstrated that these shipping tasks require Schaefer to exercise discretion and independent judgment for purposes of summary judgment. We therefore make no determination whether decisions made related to these types of tasks would be "with respect to matters of significance." 29 C.F.R. § 541.207(a).

To the extent that AEP does point to some tasks that undisputedly require the exercise of discretion, AEP has failed to establish the extent to which Schaefer completes these tasks as part of his primary duty and thus fails to meet

discretion" under the regulations for the MCA does not, however, appear to have the specific and specialized meaning of "discretion and independent judgment" under the administrative exemption – particularly the exclusion of "application of skill."

its burden of establishing that Schaefer "customarily and regularly" exercises discretion and independent judgment. Specifically, some benchmarking and the completion of some of the condition reports are probably also part of Schaefer's primary job duty. There is insufficient evidence of record, however, to determine how often he performed them as part of his primary job duty or how often they required him to exercise discretion or independent judgment. Schaefer spends less than one percent of his time on benchmaking, which involves calling various facilities and talking to an employee with a near corresponding position to his own about how that facility handles a particular issue. Schaefer then narrows the options based on what is feasible at Cook, presenting these options to his supervisor, sometimes with a recommendation about the option he prefers. Of the one percent of his time that Schaefer spends on benchmarking, only a portion of this time relates to his primary duty, such as when he performs benchmarking to ascertain how to ship an unusual piece of waste – for example, a large block of concrete. Other times, the benchmarking relates to secondary duties – for example, justifying a current practice or researching a specific issue such as when he was asked to look into different ways companies estimated the amount of tritium found in waste because AEP was concerned that they were over-estimating the amount. The record does not reveal what amount of the total one percent of time Schaefer spent on benchmarking relates to his primary duty.

Likewise, AEP has not established that Schaefer exercises discretion with sufficient frequency while completing condition reports as part of his primary duty. Schaefer spends ten to twenty percent of his time on condition reports, "depending on the ebb and flow of them." J.A. 95. According to Schaefer's deposition, condition reports are part of AEP's "corrective action program." J.A. 427. According to Long, "[a] condition report is – what we call something adverse to quality; a problem." J.A. 122. These problems "[m]ay be small; may be large." *Id*. All employees – exempt and nonexempt – participate in this program. J.A. 427.

Schaefer testified that condition reports have parts: "condition identification, condition evaluation, the proposed actions and actual actions that have been performed." J.A. 241. Schaefer admits that some analysis is required when he is assigned the "condition evaluation" section. *Id*. He testified that he performs condition evaluation "[r]arely to infrequently. . . . maybe onto the infrequently side." *Id*. Other times he comes in where the specific action is to be performed in which case "there's no analysis required, there's no determination to be made, other than just perform that task, perform the action that was proposed." *Id*. Some condition reports no doubt have required that Schaefer exercise discretion and independent judgment. We have insufficient information, however, on how often that might have occurred and, of the times it occurred, how often it related to an actual shipment as opposed to a secondary task.

Most of AEP's argument that Schaefer customarily and regularly exercises discretion and independent judgment is based upon tasks that are not part of Schaefer primary job duty, many of which Schaefer has completed infrequently or even only once. We need not consider whether Schaefer exercises discretion when completing secondary tasks. 29 C.F.R. § 541.214(a). AEP has not met its burden of demonstrating that the undisputed facts show that Schaefer customarily and regularly exercises discretion and independent judgment.

### III. CONCLUSION

Here, where the employer bears the burden of proving an exemption that is to be construed narrowly against the employer, AEP has not demonstrated that no reasonable trier of fact could find that Schaefer's primary duty does not consist of work "directly related to management policies or general business operations of his employer" or that Schaefer does not exercise sufficient discretion and independent judgment to meet the exemption when the facts are viewed in the light most favorable to Schaefer. Issues of material fact

persist and it must be left to a trier of fact to weigh the credibility of Schaefer's characterization of his day-to-day duties with that of AEP. Accordingly, we **REVERSE** the decision of the district court granting summary judgment to AEP and **REMAND** for further proceedings.

## CONCURRENCE

SUHRHEINRICH, Circuit Judge, concurring. I concur in Judge Cole's analysis. I write separately simply to indicate my belief that we can decide this issue as a matter of law in favor of Plaintiff-Appellant Schaefer. I would therefore grant Plaintiff's motion for summary judgment and deny AEP's.

The decision of whether an employee is exempt from the FLSA's overtime compensation provisions under 29 U.S.C. § 213(a)(1) is primarily a fact question. *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 330 (5th Cir. 2000); *see also Ale v. Tennessee Valley Auth.*, 269 F.3d 680, 688-89, 691 (6th Cir. 2002) (stating that the DOL regulations indicate that courts must look to specific fact in determining whether an employee is exempted for overtime provisions, citing 29 C.F.R. § 541.103, 207(b)). However, the ultimate decision of whether the employee is exempt from the overtime compensation provision, § 207(a)(1), is a question of law. *Ale*, 269 F.3d at 691; *Lott*, 203 F.3d at 331.

In my view, AEP has, at a minimum, failed to create a genuine issue of fact on the question of whether Schaefer's primary duty "includes work requiring exercise of discretion and independent judgment." 29 C.F.R. § 541.1(e)(2); 29 C.F.R. § 541.214(a). As the majority points out in its analysis, AEP failed to demonstrate (as part of its burden in response to Schaefer's motion for summary judgment) that the "decisions" and "judgments" made by Schaefer when applying DOT regulations, require use of his discretion or judgment distinct from the application of skill or knowledge. That is, AEP's examples of "judgments" made by Schaefer when applying the regulations entail only the application of his skill or knowledge.

Many skilled people, like electricians, nurses, and other skilled professionals and tradesmen, make all kinds of discretionary decisions in carrying out their skill, profession or trade, but that is not the kind of discretion envisioned by the short test. Indeed, the applicable regulation, explicitly makes this distinction. *See Ale*, 269 F.3d at 685 (stating that "section 541.207(c) distinguishes the exercise of discretion and independent judgement from the use of skill in applying techniques, procedures, or specific standards").

> Perhaps the most frequent cause of misapplication of the term "discretion and independent judgement" is the failure to distinguish it from the use of skill in various respects. An employee who merely applies his knowledge in the following prescribed procedures or determining which procedures follow, or who determines whether specified standards are met . . . is not exercising discretion and independent judgement within the meaning of § 514.2. This is true even if there is some leeway in reaching a conclusion, as when an acceptable standard includes a range or tolerance above or below a specific standard.

29 C.F.R. § 541.207(c)(1) (2003). Schaefer's own testimony reflects that the decisions he makes are applications of his skill or knowledge as an environmental specialist in following proscribed procedures or determining which procedures to follow. *See* 29 C.F.R. § 541.207(c)(1). The district court did not consider this subsection (c)(1) in its analysis.

Furthermore, as the majority holds, of those tasks that indisputedly require Schaefer to exercise discretion, "AEP has failed to establish the extent to which Schaefer completes these tasks as part of his primary duty." *Maj. Op., ante*, at 15. Nor did AEP establish that Schaefer exercises discretion with sufficient frequency while completing condition reports as part of his primary duty. Thus, AEP has failed to meet its burden of establishing that Schaefer "customarily and regularly" exercises discretion and independent judgment.

Having failed to meet its burden of showing that the employee meets every aspect of the definition for an exempt employee, *see Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960) (holding that employer bears burden of proof, on each and every element of the claimed exemption); *see generally Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974) (application of an exception under the FLSA is a matter of affirmative defense, and the employer has the burden of proof), summary judgment for Schaefer is appropriate. I would therefore remand to the district court with instructions to enter summary judgment in favor of Schaefer.

_____

**DISSENT**

_____

ROGERS, Circuit Judge, dissenting. Essentially for the reasons given in Judge Quist's careful opinion below, 197 F.Supp.2d 935, I would affirm the judgment of the district court.