HELENE N. WHITE, Circuit Judge,
dissenting.
I respectfully dissent. Defendants have not shown that Plaintiffs fall within the administrative exemption as a matter of law, and that Defendants are thus entitled to summary judgment. The record supports that there are genuine issues of fact regarding whether Plaintiffs’ primary duty[1] as Home Lending Underwriters (HLUs) “includes the exercise of discretion and independent judgment with respect to matters of significance,” the third element of the administrative exemption. 29 C.F.R. § 541.200(a)(3).
HLUs make no holistic decisions; rather, like loan originators and processors, they are links in a chain that culminates in delivering loan products to the bank’s customers. The exercise of discretion and independent judgment “involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered,” 29 C.F.R. § 541.202(a), and “must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources,” id. § 541.202(e). Unlike the insurance adjusters cited by the majority, who exercise discretion by “evaluating and making recommendations regarding coverage of claims; determining liability and total value of a claim; negotiating settlements; and making recommendations regarding litigation,” see 29 C.F.R. § 541.203(á), HLUs make no such independent discretionary decisions. Rather, HLUs must follow Defendants’ very explicit and detailed manuals and guidelines. PID 842, 874, 880, 959, 983, 997, 1629. Defendant Huntington National Bank’s Vice President Mary Cline testified that HLUs can approve a loan “with conditions,” but that simply means that “there’s additional information that the underwriter will still need,” and the “conditions” are relayed to the loan processor, who collects the information and forwards it to the underwriter. Defendants have not shown that HLUs exercise discretion in determining whether *999 to approve loans, with or without conditions.
The majority asserts that HLUs’ decisions “significantly impact the business and do determine the risk Huntington will accept for any particular loan.” Maj. Op. at 997-98. I disagree. HLUs do not balance risk against security. The Product Development Group develops the various loan products and determines the risk level for each loan product, not HLUs. PID 891, 953-54. Moreover, loans cleared by HLUs are subject to independent review by two separate groups: the Pre-fund Audit Group and the Post-closing Quality Review Group. PID 911-12, 962-63.
The majority also concludes that HLUs exercise discretion and independent judgment concerning “matters of significance” because HLUs can approve loans of between $250,000 and $1,000,000. But all of the risk decisions are made elsewhere. And, tellingly, Defendants do not track the loans each HLU has approved or hold HLUs accountable when loans they approved default. PID 998-1001. Rather, Defendants’ monthly review of HLUs is based on a production number calculated for each HLU based on the types of loan and review activities the particular HLU performs. PID 897-98, 906-08, 9,15. Because HLUs are evaluated based on the number of files reviewed, and the default rates of loans they approve are not even tracked, much less used as a basis of performance evaluations, a reasonable fact finder would likely infer that HLUs do not exercise discretion and independent judgment concerning “matters of significance.”
The majority notes that “[t]he authority to grant a counteroffer does not appear in the Guidelines. Instead, it is left to the underwriter to use his or her judgment and experience.” Maj. Op. at 991. However, according to Cline, HLUs lack authority to communicate a counteroffer to the loan processor and originator unless the customer meets all requirements for the loan being “counteroffered.” That is, counteroffers involve no discretion; HLUs simply determine whether the customer meets the requirements of an alternative loan under Defendants’ policies and manuals. PID 880-88.
Finally, although the majority accurately observes that in the 2004 regulations, 29 C.F.R. § 541.203(b)[2] lists financial-ser-viees-industry employees as an example of employees who are usually exempt, Maj. Op. at 994-95, the Administrator of the Department of Labor Wage and Hour Division issued an opinion letter in 2010 finding mortgage-loan officers, who admittedly have more of a sales role than the HLUs, non-exempt, in which the Administrator makes clear that the financial-serviees-in-dustry example in § 541.203(b) does not
create[ ] an alternative standard for the administrative exemption for employees in the financial services industry.... Contrary to the assumption in [the Administrator] Opinion Letter FLSA 2006-31, the administrative exemption is only applicable to employees that meet the requirements set forth in 29 C.F.R. § 541.200.... The fact example at 29 C.F.R. § 541.203(b) is not an alternative *1000 test, and its guidance cannot result in it “swallowing” the requirements of 29 C.F.R. § 541.200.
See Administrator’s Opinion Letter Fan-Labor Standards Act, 2010 WL 1822428 (Dep’t of Labor Mar. 24, 2010)[3] (approved in Perez v. Mortgage Bankers Assoc., — U.S. -, 135 S.Ct. 1199, 1206-07, 1209, 191 L.Ed.2d 186 (2014)).
Further, “analysis” as used in § 541.203(b) does not contemplate the type of cabined analysis HLUs perform. HLUs.determine whether the documentation submitted by the loan applicant and collected by the loan processor is accurate and meets the requirements set forth in Defendants’ manuals and policies. In contrast, “analysis” in the financial services example referred to in § 541.203(b) involves evaluation of the information collected by weighing factors and making independent judgments, e.g., evaluating the source and predictability of the client’s income, the client’s present and future financial needs, and the client’s investing experience and risk tolerance, and then suggesting investment products suitable to the client’s'profile. This type of analysis is not akin to analyzing credit information against a manual, which is what HLUs do.
I would reverse and remand for further proceedings.

. The term "Primary Duty”
means the principal, main, major or most important duty that the employee performs. Determination of an employee’s primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee’s relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.
29 C.F.R. § 541.700(a).

. 29 C.F.R. § 541.203(b) states:
Employees in the financial services industry generally meet the duties requirements for the administrative exemption if their duties include work such as collecting and analyzing information regarding the customer's income, assets, investments, or debts; determining which financial products best meet the customer's needs and financial circumstances; advising the customer regarding the advantages and disadvantages of different financial products; and marketing, servicing or promoting the employer’s financial products. However, an employee whose primary duty is selling financial products does not qualify for the administrative exemption.

. The 2010 Administrator’s Opinion Letter also discusses with approval two Sixth Circuit cases Plaintiffs rely on, Martin v. Indiana Michigan Power Co., 381 F.3d 574 (6th Cir.2004), and Schaefer v. Indiana Michigan Power Co., 358 F.3d 394 (6th Cir.2004):
Work does not qualify as administrative simply because it does not fall squarely on the production side of the line. As the court stated in Martin v. Indiana Michigan Power Co., 381 F.3d 574, 582 (6th Cir.2004), while production work cannot be administrative, there is no "absolute dichotomy under which all work must either be classified as production or administrative." The court rejected the company’s argument that its information technology support specialists were administrative employees because they performed troubleshooting on computers on individual employees’ desks and were not directly involved with the nuclear power plant equipment that "produced” electricity. Otherwise, the court asserted, employees such as "the janitorial staff^ the security guards, the cooks in the cafetéria, and various other workers” would be viewed as doing administrative work. Id.; see Schaefer v. Indiana Michigan Power Co., 358 F.3d 394, 402-03 (6th Cir.2004) (employee who was primarily responsible for shipments of radioactive materials and waste away from the plant, setting up shipments with the transporter and waste management facility, determining the type of packaging to be used, preparing manifests, inspecting containers, etc., is not engaged in administrative work simply because he is engaged in an activity collateral to the principal business purpose of producing electricity; duties must be related to servicing the business itself to be administrative).
Administrator's Opinion Letter, 2010 WL 1822423, at *3.